EL PUEBLO DE PUERTO RICO, apelado, *v.* REY RIVERA RODRÍGUEZ, acusado y apelante.

*Número:* CR-87-76          *Resuelto:* 17 de marzo de 1989

468

*Héctor Landrón Hernández*, abogado del apelante; *Norma Cotti Cruz, Subprocuradora General,* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar*, abogadas de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Rey Rivera Rodríguez fue acusado y convicto en el Tribunal Superior de Puerto Rico, Sala de Carolina (Hon. Crisanta Rodríguez, Juez), por infringir el Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404, y el Art. 6 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 416. Inconforme, apela ante este Tribunal.

En su alegato, el apelante plantea cuatro (4) errores:[1]

PRIMER ERROR:

Incidió el Tribunal de instancia al negarse a suprimir la evidencia obtenida, la que fue ocupada a base de una orden de allanamiento que se expidió sin que el magistrado que la dictó hubiera examinado personalmente al declarante.

SEGUNDO ERROR:

Erró el Tribunal de instancia al no suprimir la evidencia que se ocupó a base de una orden de allanamiento que descansaba

---

[1] Reiteradamente hemos resuelto que compete al apelante demostrar que el tribunal de instancia debe ser revocado. *Pueblo v. Najul Bez,* 111 D.P.R. 417, 423 (1981); *Pueblo v. Prieto Maysonet,* 103 D.P.R. 102, 107 (1974). Debido a que el apelante no argumenta uno de los señalamientos de error planteados en su escrito de apelación, no lo consideramos.

en una declaración de carácter estereotipada e insuficiente en derecho.

TERCER ERROR:

Cometió error la Sala de instancia al declarar culpable al apelante a base de una declaración estereotipada.

CUARTO ERROR:

No se estableció la culpabilidad del apelante más allá de toda duda razonable ni se controvertió la presunción de inocencia. Alegato del apelante, págs. 5–6.

## I

La prueba de cargo en este caso consistió en el testimonio del agente William Rodríguez Rivera y las declaraciones del agente Juan J. Rodríguez Carrasquillo y del químico Luis Meléndez que se admitieron por estipulación.

La defensa no aportó prueba alguna. Antes de iniciarse el proceso, el apelante presentó una moción de supresión de evidencia, en la cual adujo que la evidencia ocupada fue obtenida ilegalmente. Alegó, en esencia,(2) que la orden se expidió sin que existiera causa probable, que las conclusiones del juez sobre la declaración jurada que sirvió de apoyo "'son vagas, confusas e incompletas'" y que la orden "'fue librada y cumplimen[ta]da ilegalmente'". Alegato del apelante, pág. 2.

Durante el juicio celebrado por tribunal de derecho, la moción de supresión de evidencia fue declarada sin lugar. El tribunal dictaminó que el juez que expide una orden de allanamiento no tiene que interrogar al testigo si ha leído su

---

(2) En dicha moción también planteó, como motivo para suprimir la evidencia, que se expidió la orden para ser cumplimentada de día o de noche sin expresión de las razones de necesidad y de urgencia para así hacerlo, y que no se describió particularmente las cosas a ocuparse. Estas alegaciones claramente carecen de méritos.

declaración jurada y entiende que está conforme con la misma.

El único testigo que declaró, el policía William Rodríguez Rivera, dijo ser agente de la División de Drogas en la Sección de Allanamientos. Señaló que su trabajo en la división es investigar querellas sobre el tráfico de drogas. Para ello, acostumbra investigar el área frecuentada por los narcotraficantes e indagar sobre cuántas personas viven en la residencia, si tienen vehículos y a qué horas se frecuenta el lugar para así levantar un expediente y luego solicitar una Orden de Allanamiento. Alegato del apelante, pág. 3.

Continuó expresando el agente Rodríguez que el 13 de enero recibió una orden de su superior, el agente Orlando Rosa, para que investigara una querella en la Calle Pándamo W-882 de la Urbanización Loíza Valley en Canóvanas. Se le dijo que allí vivía un sujeto de aproximadamente 5 pies 9 pulgadas de estatura, pelo "ensortijado" y delgado que se dedicaba al trasiego ilegal de drogas.

Fue sin compañía al lugar, como a la 1:00 P.M., y localizó un punto de vigilancia hacia la residencia. Al poco tiempo observó que llegó una motora color negro conducida por un joven de 5 pies 9 pulgadas, trigueño, pelo negro, que vestía camisa a rayas, pantalón y botas color *brown*. El individuo llamó hacia el interior y, al cabo de unos minutos, salió un joven trigueño claro, de pelo "ensortijado", vestido con camisa gris, pantalón corto mahón, medias deportivas y tenis blancos. Luego de una breve conversación, el individuo de camisa gris, quién luego resultó ser el acusado Rivera Rodríguez, penetró en la residencia y regresó más tarde con una bolsa plástica transparente con un polvo blanco en su interior. Dijo que observó cómo el acusado le entregó la bolsa al hombre de la motora y éste, a su vez, sacó dinero de su bolsillo y se fue. El acusado entonces abordó un vehículo blanco tablilla 65R839 y se marchó del lugar. Continuó declarando

que regresó al cuartel, de donde solicitó relación de la tablilla, que correspondió a un vehículo propiedad del acusado.

Relató también que el 14 de enero de 1987 volvió a la residencia antes descrita y se ubicó en el mismo lugar. Desde allí, como a las 2:10 P.M., observó que llegó un individuo en bicicleta como de 5 pies 7 pulgadas de estatura que vestía camisa blanca, pantalón mahón azul y tenis blancos. Éste llamó y al poco rato salió el acusado, esta vez sin camisa, vistiendo pantalón corto y chancletas. Se repitió la misma escena del día anterior, pero en esta ocasión la bolsa transparente que el acusado le entregó al individuo de la bicicleta a cambio de dinero tenía "picadura semejante a la de marihuana". Alegato del apelante, pág. 4. Después de esta transacción, el agente se retiró del lugar.

Finalmente, dijo que el 15 de enero de 1987 regresó al punto de vigilancia como a las 2:30 P.M. Declaró que a las 2:52 P.M. llegó un individuo que vestía camisa tipo "hawaiiana", de 30 a 35 años de edad y trigueño. Vio que el acusado salió, habló con el recién llegado, fue al interior de la casa, salió con un polvo blanco y se lo entregó a cambio de dinero. El agente se retiró posteriormente a redactar los informes correspondientes.

El 20 de enero de 1987 prestó ante el Juez Municipal Luis Roque una declaración jurada y el magistrado procedió a expedir la orden. Dicha orden fue diligenciada el 22 de enero de 1987 y, en el proceso, se ocupó un arma de fuego y cocaína. En ese momento fue arrestado el acusado.

En el contrainterrogatorio dijo no conocer a ninguna de las personas que observó durante los tres (3) días que fue al lugar de la confidencia. Declaró que la primera persona a quién vio tenía como 24 ó 25 años. Expresó que mientras observaba las distintas transacciones se encontraba a unos 20 ó 25 pies de la casa del acusado dentro de un vehículo no rotulado que había estacionado en una "curvita" frente a la casa de la esquina. Entre ese lugar y la casa del acusado hay

sólo una residencia de por medio. Sobre la declaración jurada que prestó ante el juez municipal, dijo que éste la leyó en su presencia y la juramentó, pero no le hizo pregunta alguna sobre el contenido.

La otra prueba, admitida por estipulación, fue el Informe Pericial de Sustancias Controladas y la declaración jurada del agente Juan Rodríguez Carrasquillo, uno de los policías que intervino en el allanamiento. Del análisis químico practicado al polvo blanco que le entregó el agente Rodríguez Carrasquillo al agente Luis Meléndez se desprende la presencia de cocaína. La declaración de Rodríguez Carrasquillo detalla los pormenores del registro, incluso la incautación del revólver cargado y la cocaína que se ocupó en una cajita de metal debajo de una máquina de coser.

## II

La Regla 231 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone en lo aquí pertinente que:

> No se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla. Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro, librará la orden. . . .

El apelante señala que en el caso de autos el magistrado incumplió con el requisito de examen del declarante, ya que cuando el magistrado no se encuentra presente al momento en que el agente del orden público presta su declaración, el magistrado está obligado a interrogar específicamente al declarante sin limitarse a su declaración jurada. Su planteamiento se funda en lo resuelto en *Laureano Maldonado v. Tribunal Superior*, 92 D.P.R. 381 (1965).

En *Laureano*, el peticionario había sido acusado por violación a la Ley de la Bolita y presentó una moción de supre-

sión de evidencia en la que alegaba *inter alia* que la orden de registro no fue dictada conforme a derecho, ya que el juez que la expidió no interrogó al agente declarante. En dicho caso, "mientras el policía dictaba su declaración a la secretaria en el cuartel, el juez de paz estaba presente y escuchando[. A]l terminar la secretaria, el juez de paz revisó la referida declaración" y expidió la orden sin hacerle preguntas al declarante. Íd., pág. 388. Concluimos allí que si el juez no le hizo preguntas "fue porque no lo consideró pertinente, pues no necesitaba información adicional alguna para llegar a la conclusión judicial de que de la declaración jurada surgía causa probable para ordenar el registro". Íd. Añadimos que "el término 'examen' no significa[ba] exclusivamente el hacerle preguntas al declarante" y que en efecto en dicho caso se había producido dicho examen cuando al magistrado que oyó la declaración *"luego la revisó y determinó que ésta contenía hechos suficientes para justificar plenamente la determinación de causa probable"*. (Énfasis nuestro.) Íd., págs. 388-389.

El apelante nos apunta que este caso es sustancialmente distinto a *Laureano Maldonado v. Tribunal Superior*, supra, y nos cita enfáticamente del mismo la expresión siguiente: "Es juicioso señalar, sin embargo, que en circunstancias que no sean similares a las que privan en este caso, los jueces deben 'examinar' más específicamente al declarante, además de su declaración jurada." Íd., pág. 389. Nos recalca que sólo cuando el magistrado esté presente mientras el agente preste su declaración es que puede sustituirse el examen específico y personal del declarante. No tiene razón. *Laureano Maldonado v. Tribunal Superior*, supra, no puede interpretarse de forma tan restringida como pretenden el apelante y la opinión disidente suscrita por el Juez Asociado Señor Rebollo López.

■ De entrada, procede aclarar que el examen específico y personal del declarante no es un requisito constitucional. En relación con el referido examen, nuestra Constitución *nada* dispone. El texto constitucional pertinente en lo relativo a las órdenes de registro se limita a consignar que: (1) únicamente pueden expedirse por autoridad judicial; (2) solamente pueden expedirse cuando existe causa probable *apoyada en juramento o afirmación*, y (3) se tiene que describir adecuadamente el lugar a registrarse y las cosas a ocuparse. Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1. El texto de la Cuarta Enmienda de la Constitución de Estados Unidos, L.P.R.A., Tomo 1, es sustancialmente idéntico. Una declaración jurada suscrita por una persona con conocimiento personal de los hechos cumple con el segundo requisito constitucional.

En la jurisdicción federal es interesante destacar que la Regla 41(c) de Procedimiento Criminal federal, 18 U.S.C., la homóloga de nuestra Regla 231 de Procedimiento Criminal, *supra, nunca* exigió el examen del declarante como requisito para determinar causa probable para un allanamiento. De hecho, el problema que se presentaba en dicha jurisdicción, antes de 1972, era bajo qué circunstancias el magistrado podía, para suplementar el afidávit, considerar el testimonio verbal prestado. En 1972, la Regla 41 de Procedimiento Criminal federal, *supra*, se enmendó para permitir que el magistrado pudiera discrecionalmente exigir la presencia del declarante y los testigos e interrogarlos bajo juramento.(3) Véase Anotación, *Federal Court Determination of Probable*

---

(3) Pero para poder apoyar su determinación de causa probable en dicho testimonio, éste tiene que quedar consignado en el récord del procedimiento y se tiene que incorporar al afidávit.

·Más recientemente, la regla federal se enmendó para permitir que el declarante, en ciertos casos, le comunique al magistrado su testimonio *por vía telefónica u otro medio adecuado* y así mismo se autorice el registro. Véase Regla 41(c)(2)(A) de Procedimiento Criminal federal, 18 U.S.C.

*Cause for Search Warrant: Consideration of Oral Testi-
mony which was, in Addition to Affidavit, Before Officer
Who Issued Warrant,* 24 A.L.R. Fed. 107 (1975).

En California, la Sec. 1526 del Código Penal, de donde
proviene parcialmente nuestra Regla 231 de Procedimiento
Criminal, *supra,*(4) antes de 1957 requería específicamente
que el magistrado que dictara la orden examinara previa-
mente a los declarantes, porque tenía la obligación de inte-
rrogar al querellante y a sus testigos, levantar una deposi-
ción por escrito y tomarle la firma a los deponentes.(5) El
examen del declarante era indispensable precisamente por
estos requisitos estatutarios. En el 1957 se agilizó el proceso
con una enmienda a la referida Sec. 1526 del Código Penal de
California, para eliminar la deposición obligatoria y exigir la
presentación ante el magistrado de una o más declaraciones
juradas escritas. Como parte de dicha enmienda y ante la
presencia de afidávit, se hizo discrecional el examen de los
declarantes.(6)

---

(4) El historial de la Regla 231 de Procedimiento Criminal, 34 L.P.R.A. Ap.
II, nos remite no sólo a las Secs. 1525 a 1528 del Código Penal de California, sino
también a la ya citada Regla 41(c) de Procedimiento Criminal federal, *supra.*

(5) Antes de la enmienda de 1957, la Sec. 1526 del Código Penal de California
leía:

"The magistrate must, before issuing the warrant, examine on oath the com-
plainant, and any witnesses he may produce, and take their depositions in writ-
ing, and cause them to be subscribed by parties making them." 4 *Kerr, The Codes
of California* Sec. 1526, pág. 1367 (1908).

Este texto estuvo vigente desde 1867. Nuestro anterior Art. 504 del Código
de Enjuiciamiento Criminal de 1935 (34 L.P.R.A. ant. sec. 1814) era una traduc-
ción casi literal de la transcrita sección.

(6) Luego de sufrir dos (2) enmiendas adicionales, actualmente la Sec. 1526
del Código Penal de California, *supra,* provee dos (2) vías para obtener la orden:

"(a) The magistrate may, before issuing the warrant, examine on oath the
person seeking the warrant and any witnesses he may produce, and must take his
affidavit or their affidavits in writing, and cause same to be subscribed by the
party or parties making same.

"(b) In lieu of the written affidavit required in subdivision (a), the magis-
trate may take an oral statement under oath which shall be recorded and trans-
cribed. The transcribed statement shall be deemed to be an affidavit for the

En Puerto Rico, nuestra Regla 231 de Procedimiento Criminal, *supra*, exige que se presenten ante el juez declaraciones juradas escritas. Luego de emitida la decisión en *Laureano Maldonado v. Tribunal Superior*, supra, este Tribunal ha establecido unas guías para evaluar dichas declaraciones juradas cuando han sido prestadas por agentes del orden público. Véanse: *Pueblo v. Ayala Ruiz*, 93 D.P.R. 704, 708 (1966); *Pueblo v. González del Valle*, 102 D.P.R. 374, 378 (1974). Estos criterios le han impuesto a los agentes mayor rigor en la preparación de sus testimonios.

█ Resolvemos ahora que si la declaración jurada prestada es completa, clara, detallada, libre de contradicciones y el juez que la revisa no tiene dudas sobre algún extremo de la misma, no es requisito indispensable que el juez interrogue al declarante. No obstante, la declaración debe ser rigurosamente examinada por el magistrado y, si tiene alguna duda sobre su contenido, debe formular las preguntas necesarias antes de llegar a su determinación.

█ La decisión que hoy emitimos no tiene el efecto de poner en manos de los organismos investigativos del Estado la facultad de obtener y expedir órdenes de registro y de allanamiento. De ninguna manera eliminamos la interposición de la figura independiente e imparcial del magistrado entre la Policía de Puerto Rico y la ciudadanía. El agente del orden público que desea la emisión de una orden de registro *tiene* que acudir ante un juez con una declaración jurada que exponga hechos que justifiquen su expedición.

purposes of this chapter. In such cases, the recording of the sworn oral statement and the transcribed statement shall be certified by the magistrate receiving it and shall be filed with the clerk of the court. In the alternative in such cases, the sworn oral statement shall be recorded by a certified court reporter and the transcript of the statement shall be certified by the reporter, after which the magistrate receiving it shall certify the transcript which shall be filed with the clerk of the court." West's Ann. Cal. Penal Code Sec. 1526, pág. 559.

El agente *tiene* que comparecer personalmente ante el magistrado y estar *disponible* para ser interrogado en caso de que el juez tenga cualquier reparo sobre algún aspecto o detalle de la declaración prestada. A priori, el agente no puede confiar en que su declaración no será cuestionada. Además, si bien el agente puede preparar previamente su declaración, no es menos cierto que igualmente se expone y está sujeto a una convicción por perjurio de probarse que su declaración es falsa.

La protección a la ciudadanía no se encuentra en la imposición de un requisito de examen inflexible e inexorable del declarante. Lo determinante es que exista una Judicatura alerta y dispuesta a detectar las contradicciones, las omisiones y la falsedad en las declaraciones prestadas. En ausencia de este factor, exigir que se interrogue específicamente al declarante podría constituir un requisito pro forma y un ejercicio en futilidad que no protege efectivamente la intimidad del pueblo.

La regla propuesta por el apelante y acogida por la opinión disidente supondría que ante este Tribunal atenderíamos en apelación o por vía de *certiorari* no sólo planteamientos de error, por qué no se interrogó al declarante, sino que además señalamientos relativos a la *suficiencia* de las preguntas formuladas por el magistrado antes de emitir la orden. En las vistas de supresión de la evidencia ocupada al amparo de dicha orden, las salas de primera instancia se enfrentarían a controversias sobre el *contenido* del interrogatorio practicado en el procedimiento *ex parte* de obtención de la orden. Por su naturaleza, dicho procedimiento es dinámico y para éste *no existe un récord judicial* ni grabaciones que permitan revisar la determinación tomada por el juez. Sería necesario en dichas vistas preguntarle a todos los participantes e inquirir sobre el proceso deliberativo que culminó en la expedición de la orden. En estas circunstancias, como

dijimos en *Laureano Maldonado v. Tribunal Superior*, supra, pág. 389:

No podemos imprimirle en derecho a la frase "examen del declarante" . . . el enfoque literal que apunta el [apelante], pues aunque estamos conscientes y debemos ser celosos guardianes del principio de que los requisitos procesales que salvaguardan el derecho contra registros arbitrarios e irrazonables deben observarse estrictamente, también creemos que un enfoque práctico es el que debe prevalecer en esta materia. . . . Es preciso aclarar que este enfoque práctico no está reñido con el principio que hemos expuesto en cuanto a los requisitos procesales sino que, al contrario, contribuye a hacerlos viables.

Esta norma no puede significar una abdicación de la función judicial activa e inquisitiva previa a la expedición de la orden. La Judicatura debe ser celosa en el análisis de las declaraciones que sirven de fundamento para las órdenes de registro y así prevenir una supresión de evidencia posterior. Nótese que los acusados no quedan desprovistos de remedios si entienden que la declaración prestada es *falsa o increíble.* La Regla 234(d) y (f) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, provee un remedio adecuado para suprimir la evidencia obtenida cuando la declaración adolece de alguna de estas fallas. Mediante la referida Regla 234, *supra,* un acusado puede cuestionar la determinación inicial de causa probable para el registro y allanamiento. La disposición le permite a la defensa presentar evidencia sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud de supresión. Esto presupone una vista donde el acusado tendrá la oportunidad de demostrar, mediante preponderancia de prueba, la falsedad del testimonio que sirvió de fundamento para la expedición de la orden.

No erró el tribunal a quo al negarse a suprimir la evidencia por falta de examen del declarante.

## III

Analicemos el segundo error planteado. El apelante ataca la suficiencia de la declaración jurada que sirvió de apoyo a la orden de allanamiento. Señala que se trata de un testimonio estereotipado, inverosímil e inherentemente increíble.

■ Testimonio estereotipado es aquel que se reduce a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlo. *Pueblo v. González del Valle*, supra, pág. 377; *Pueblo v. Almodóvar*, 109 D.P.R. 117, 125 (1979). Una de las modalidades de este testimonio es la del acto ilegal a plena vista en negocios que normalmente se amparan en la clandestinidad. *Pueblo v. González del Valle*, supra.

■ En el pasado hemos expuesto que el testimonio estereotipado debe evaluarse con cuidado y, a esos fines, establecimos algunas pautas:

En primer término, reiteramos que todo testimonio estereotipado debe escudriñarse con especial rigor.

Segundo, tanto los casos de la evidencia-abandonada-o-lanzada-al-suelo como los casos del acto-ilegal-a-plena-vista deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado.

Tercero, si el testimonio es inherentemente irreal o improbable debe ser rechazado.

Cuarto, el testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles. Se exhorta en este sentido a recordar los factores mencionados sobre este particular en *Pueblo* v. *Ayala Ruiz*, supra y casos subsiguientes.

Quinto, por el contrario, la presencia de contradicciones, lagunas o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones.

Sexto, no debe olvidarse que el peso de la prueba de librar el testimonio estereotipado de sospecha recae en el fiscal. Tal peso no se descarga con la extracción del testimonio flaco y descarnado a que se refirió *Ayala Ruiz. Pueblo v. González del Valle*, supra, pág. 378.

En el caso de autos, el apelante señala que las tres (3) transacciones observadas por el agente se realizaron de modo similar, a plena vista y a riesgo de que ojos indiscretos observasen la venta de drogas. Apunta que es increíble que el agente estuviera a sólo veinte (20) pies de distancia sin que nadie se percatara de su presencia. Señala que es inverosímil que de dicha distancia haya podido percatarse del contenido de unas bolsas transparentes de apenas cuatro (4) pulgadas. El apelante nos llama la atención al hecho de que el agente omite anotar el número de tablilla de la motora del primer sujeto que observa acercarse a la residencia del acusado.

Hemos examinado cuidadosamente la declaración jurada prestada por el agente según está consignada en la orden de allanamiento y concluimos que no constituye testimonio inherentemente irreal o improbable, que está rodeada de detalles relativos a la investigación y sus resultados, y que no contiene contradicciones,[7] vaguedades u omisiones esenciales.

El hecho de que las transacciones se hayan realizado a plena vista no hace el testimonio inherentemente irreal. Por el contrario, la criminalidad y el trasiego de drogas que sufre el país ha llegado a un nivel que los delincuentes no temen realizar transacciones en lugares donde pueden estar sujetos a ser vistos por terceras personas. Véase *Pueblo v. Espinet Pagán*, 112 D.P.R. 531, 536-537 (1982).

Tampoco nos convence su argumento sobre la omisión del agente de anotar la tablilla de la motora. Aunque el agente

---

[7] Tampoco hay contradicciones sobre elementos esenciales entre la declaración jurada y el testimonio del agente en el juicio.

incurrió en esta omisión, fue suficientemente cuidadoso en el resto de su investigación para que refrendemos sus gestiones.

■ En cuanto al lugar donde se encontraba el agente, notamos que se ubicó al lado de la casa del apelante. El tribunal de instancia tuvo ante sí una descripción precisa del lugar preparada por el agente. No intervendremos en la apreciación de esa prueba en ausencia de una demostración de prejuicio, parcialidad o de que es claramente errónea. *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986); *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454 (1988).

Por lo tanto, concluimos que la declaración prestada ante el juez municipal no es estereotipada y que es suficiente en derecho para la determinación de causa probable para expedir una orden de allanamiento.

## IV

Los errores tercero y cuarto apuntados por el apelante van dirigidos a cuestionar la suficiencia de la prueba. Su argumento es que tratándose de prueba de cargo de carácter estereotipado que no pudo ser librada de sospechas por el Ministerio Público surge con toda fuerza la duda razonable. No tiene razón.

La prueba presentada y admitida sostiene más allá de toda duda razonable las convicciones sobre posesión de sustancias controladas, Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, *supra*, y por posesión de arma de fuego sin tener licencia, Art. 6 de la Ley de Armas de Puerto Rico, *supra*. El apelante no cuestiona los frutos del allanamiento; al contrario, dicha prueba fue estipulada. El problema de testimonio estereotipado en este caso está relacionado con la controversia de si hubo causa probable para expedir la orden de allanamiento. Ello no derrota el hecho in-

disputado de la ocupación en la residencia del apelante de un arma de fuego cargada y de cocaína.

Por todo lo antes expuesto, *se dictará sentencia confirmatoria.*

El Juez Asociado Señor Negrón García concurre con el resultado sin opinión escrita por lo expuesto en la Parte III de la opinión. El Juez Asociado Señor Rebollo López emitió una opinión disidente. El Juez Asociado Señor Ortiz no intervino.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

El Tribunal, mediante la decisión errónea, ambigua, totalmente innecesaria y sumamente peligrosa que emite en el día de hoy, abre las puertas para que comience a derrumbarse la protección constitucional contra registros y allanamientos ilegales e irrazonables en nuestra jurisdicción.

Disentimos vehementemente de la opinión mayoritaria emitida. En clara violación del mandato constitucional del Art. II, Sec. 10 de nuestra Constitución, L.P.R.A., Tomo 1, de las disposiciones de la Regla 231 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y de la jurisprudencia interpretativa de las mismas, se rechaza el meritorio planteamiento del apelante a los efectos de que procedía la supresión de la evidencia obtenida en un allanamiento efectuado en su hogar por razón de que el magistrado que expidió la orden de allanamiento *no* "examinó personalmente" al agente declarante.

La decisión que hoy se emite por este Tribunal tiene el efecto práctico de poner, casi exclusivamente, en manos de la Policía de Puerto Rico la obtención y expedición de órdenes de registro y allanamiento, haciendo de los jueces unos meros sellos de goma y convirtiendo su función, en esta clase de situaciones, en una puramente ministerial o mecánica.

## I

Nuestra Constitución, en el Art. II, Sec. 10 de su Carta de Derechos, ante, dispone:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> No se interceptará la comunicación telefónica.
>
> *Sólo* se expedirán mandamientos autorizando registros, allanamientos o arrestos *por autoridad judicial*, y ello *únicamente cuando exista causa probable apoyada en juramento o afirmación*, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
>
> *Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.* (Énfasis suplido.)

Al momento de redactarse esta disposición constitucional —*la cual este Tribunal no puede meramente limitarse a leer, sino que viene obligado a interpretar*— quedó plasmado en el Diario de Sesiones de la Convención Constituyente el interés de que nuestra Carta de Derechos no fuera una que cumpliera en forma mínima con los requisitos impuestos por la Ley Núm. 600,[1] sino que, por el contrario, se tratara de una de las cartas de derechos más liberales, más generosas y más auténticamente democráticas del mundo.[2]

Es así como se llega a la conclusión de que:

> *La inviolabilidad de la persona* se extiende a todo lo que es necesario para el desarrollo y expresión de la misma. *El hogar*, los muebles y utensilios, los libros y papeles poseídos por un ciudadano *son como una prolongación de su persona*, pues constituyen el ámbito en que ésta se ha hecho y se mantiene. Toda intromisión sin su permiso en ese círculo privado equivale para todo hombre a una violación de su personalidad. . . .
> *La lesión de la intimidad es en este sentido el más penoso*

---

[1] Ley Pública Núm. 600 de 3 de julio de 1950, Cap. 446, 64 Stat. 319.

[2] 2 Diario de Sesiones de la Convención Constituyente 1106 (1961).

*ataque a los derechos fundamentales de la persona.*(3) (Énfasis suplido.)

Conscientes, sin embargo, los miembros de la Convención Constituyente de que en toda democracia hay personas que no están en disposición de respetar las leyes que se aprueban en beneficio de todos, lo que causa una "confrontación" entre el interés común y el estrictamente personal, los constituyentes claramente establecieron que la inviolabilidad de esos derechos personales fundamentales tendría su límite en la conducta criminal de los ciudadanos. En consecuencia, tomaron providencias para que ese pueblo democrático pudiera combatir efectivamente la conducta criminal de algunos de sus ciudadanos. Entre otros, se proveyó para la expedición de órdenes de arresto y de registro y allanamiento. Ahora bien, se estableció como salvaguarda que dichas órdenes únicamente serían procedentes en derecho cuando mediara, *a juicio de un magistrado,* "causa probable" para expedir las mismas.(4)

Del debate referente a la transcrita Sec. 10 se desprende con meridiana claridad que la intención de la Asamblea Constituyente fue que se concediera el poder de expedir esas órdenes de arresto y de registro y allanamiento, *con carácter de exclusividad,* a la autoridad judicial,(5) privándose expresamente de esa facultad a los fiscales y, ciertamente y con mayor razón, a los miembros de la Policía de Puerto Rico.

Lo anteriormente expresado constituye el fundamento del porqué la Regla 231 de Procedimiento Criminal, ante, dispone:

No se librará orden de allanamiento o registro *sino en virtud de declaración escrita, prestada ante un magistrado bajo*

---

(3) 4 Diario de Sesiones de la Convención Constituyente 2567 (1961).

(4) 4 Diario de Sesiones de la Convención Constituyente 2567–2568 (1961).

(5) 4 Diario de Sesiones de la Convención Constituyente 2568 (1961).

*juramento o afirmación*, que exponga los hechos que sirvan de fundamento para librarla. *Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro*, librará la orden en la cual se nombrarán o describirán con particularidad la persona o el lugar a ser registrado y las cosas o propiedad a ocuparse. La orden expresará los fundamentos habidos para expedirla, y los nombres de las personas en cuyas declaraciones juradas se basare. Ordenará al funcionario a quien fuere dirigida registre inmediatamente a la persona o sitio que en ella se indique, en busca de la propiedad especificada, y devuelva al magistrado la orden diligenciada, junto con la propiedad ocupada. La orden dispondrá que será cumplimentada durante las horas del día, a menos que el magistrado, por razones de necesidad y urgencia, dispusiere que se cumplimente a cualquier hora del día o de la noche. (Énfasis suplido.)

Procede que se señale que el historial de la Regla 231 de Procedimiento Criminal, ante, nos remite en adición a la Regla 41(c) de Procedimiento Criminal federal, 18 U.S.C., a los Arts. 503 a 507 y 511 de nuestro Código de Enjuiciamiento Criminal de 1935 (34 L.P.R.A. ant. secs. 1813–1817 y 1821) y a las Secs. 1525–1528 del Código Penal de California. Habiendo servido este último código de modelo para las disposiciones locales sobre la materia, resulta pertinente señalar que el Código Penal de California, específicamente la Sec. 1526, fue enmendada en el 1957 a los fines de convertir el examen por el magistrado en uno de carácter discrecional. Esto es, en California, para que se pudiera expedir una orden de allanamiento sin que el magistrado tuviera la obligación de examinar al declarante *fue preciso enmendar expresamente la disposición legal correspondiente a esos efectos.* El lenguaje de nuestra *vigente* Regla 231 de Procedimiento Criminal, ante, sin embargo, *en cumplimiento del mandato constitucional del citado Art. II, Sec. 10 de nuestra Constitución*, ante, no concede al juez discreción alguna en relación con ese "examen".

En vista de todo lo anteriormente expresado es que, a nuestro humilde entender, resulta completamente erróneo que se resuelva que cumple con ese mandato constitucional y legislativo el juez que meramente se limita, con anterioridad a firmar y expedir la orden de registro y allanamiento, a leer la declaración escrita del declarante. El magistrado que así actúa no descarga la *importantísima función* que los miembros de la Convención Constituyente y el legislador tuvieron en mente y le impusieron: la de determinar si existe o no "causa probable" para la expedición de la orden de registro y allanamiento.

Refiriéndose al proceso de expedición de órdenes de allanamiento, nos señala el profesor LaFave que el mismo "'interposes an orderly procedure' involving 'judicial impartiality' whereby 'a neutral and detached magistrate' can make *'informed and deliberate determinations'* on the issue of probable cause". (Énfasis suplido y escolios omitidos.) W.L. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 1, pág. 548.

Así es que este Tribunal, hasta el día de hoy, había vislumbrado la función del juez en la expedición de órdenes de registro y allanamiento. En fecha tan reciente como febrero de 1988 expresamos —en *Pueblo v. Malavé González*, 120 D.P.R. 470, 474 (1988)— que a los fines de garantizar el cumplimiento del mandato constitucional contra registros y allanamientos ilegales e irrazonables *"se interpuso la figura independiente e imparcial del juez* entre los agentes del orden público y los ciudadanos. . . . Corresponde al magistrado hacer el *delicado balance* entre los derechos del ciudadano y las necesidades del Estado de investigar agresivamente los delitos cometidos". (Énfasis suplido.)

En esa misma fecha —en *Pueblo v. Martínez Torres*, 120 D.P.R. 496, 500–501 (1988)— afirmamos que la citada disposición constitucional "tiene tres (3) objetivos básicos: 'prote-

ger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias *e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión . . .'. . . .* Al enfrentarnos a este dilema [del conflicto entre el interés público en combatir la criminalidad y los derechos individuales] *debemos tener presente y ser conscientes de que en el menoscabo de las garantías constitucionales . . . no está la verdadera solución al problema de la criminalidad.* Debe tenerse particular cuidado para que a través del proceso adjudicativo de controversias no se ocasione una *lamentable erosión* de los derechos garantizados por nuestra Constitución". (Énfasis suplido.)

Somos del criterio que *no* resulta posible hacer una informada y jurídicamente correcta determinación sobre causa probable cuando el juez *se limita a leer* la declaración que se le trae preparada y *cuando no examina* al declarante. Ciertamente *no* se interpone "la figura independiente e imparcial del juez entre los agentes del orden público y los ciudadanos" — *Pueblo v. Malavé González,* supra, pág. 474— resolviendo que la labor de ese juez en esta clase de situaciones puede ser una ministerial y mecánica, esto es, *circunscribiéndose a leer una declaración* y firmar la orden de registro y allanamiento. Entendemos que si ese juez en realidad va a cumplir con el mandato constitucional del antes citado Art. II, Sec. 10 de nuestra Constitución, ante, constituyéndose en ese *"delicado balance* entre los derechos del ciudadano y las necesidades del Estado de investigar agresivamente los delitos cometidos" —(énfasis suplido) *Pueblo v. Malavé González,* supra, pág. 474— el mismo tiene que ejercer una *función activa e inquisitiva* antes de expedir esta clase de órdenes.

*Ello se hace necesario por cuanto no es lo mismo, desde el punto de vista del agente del orden público, el comparecer ante un juez con una declaración ya previamente preparada sabiendo que no va a ser objeto de interrogatorio por*

*éste, a la situación en que acude ante dicho magistrado consciente de que los hechos que plasmó en la declaración jurada serán escudriñados por el mismo.* El hecho de saber que el juez le formulará preguntas respecto al contenido de su declaración es seguramente el mayor disuasivo a la prestación de *declaraciones falsas o estereotipadas* dirigidas a garantizar la obtención de una orden de registro o allanamiento. *Haciéndole preguntas incisivas a ese declarante sobre lo expuesto en su declaración escrita, escuchando sus respuestas y formulándole nuevas preguntas sobre ellas, observando la forma y manera en que declara esa persona, es el único método mediante el cual un magistrado puede llegar a la conclusión de si ese declarante está o no diciendo la verdad.* En palabras del procesalista Carnelutti,[6] citadas con aprobación por este Tribunal en *Ortiz v. Cruz Pabón,* 103 D.P.R. 939, 947 (1975), "'el testigo debe ser oído, y visto, *interrogado* y mirado'". (Énfasis suplido.)

El principio sobre la "inviolabilidad" de los hogares puertorriqueños contenido en el transcrito Art. II, Sec. 10 de nuestra Constitución, ante, y el mandato constitucional de la referida disposición a los efectos de que no se expedirán órdenes de registro y allanamiento excepto cuando, *a juicio* de un magistrado, exista *causa probable* para expedir la misma, exige que así se haga. No siendo suficiente la mera lectura de una declaración para dirimir la credibilidad de un testigo, la determinación de causa probable conlleva necesariamente "un poco más". Como único se puede garantizar la inviolabilidad de los hogares puertorriqueños contra allanamientos ilegales e irrazonables, repetimos, es *mediante el examen personal del declarante* por parte del magistrado. A nuestro entender, a ello es lo que se refiere, y exige, el Art. II, Sec. 10 de nuestra Constitución, ante, ed. 1982, pág. 299, al estable-

---

[6] F. Carnelutti, *Rivista di Diritto Processuale Civile,* 1929.

cer que *sólo se expedirán mandamientos* autorizando registros y allanamientos *por autoridad judicial,* y "ello únicamente *cuando exista causa probable . . .*". (Énfasis suplido.) Para lo contrario, esto es, *para meramente leer una declaración* y decidir si la misma contiene o no datos suficientes para expedir una orden de esa naturaleza, realmente no se necesita a un magistrado; podría encomendársele dicha labor a un paralegal. En resumen, las disposiciones de nuestra Constitución deben ser interpretadas, no meramente leídas, por este Tribunal.

El hecho de si en la jurisdicción federal, bajo las disposiciones de la Cuarta Enmienda de la Constitución de Estados Unidos, L.P.R.A., Tomo 1, se ha exigido o no el requisito del examen personal del declarante, no debería influenciar o constituir factor alguno sobre nuestra decisión en esta materia. Realmente sorprende ese argumento de la mayoría del Tribunal. Sabido es que la Enmienda Cuarta de la Constitución federal, ante, "describe el ámbito mínimo de la garantía que reconoce. Los estados no pueden achicar esas fronteras, pero pueden expandirlas". *Pueblo v. Dolce,* 105 D.P.R. 422, 427 (1976). En otras palabras, habiendo el Tribunal Supremo de Estados Unidos reconocido expresamente la facultad de los estados federados para expandir la garantía contra registros y allanamientos ilegales más allá de los límites de la citada Cuarta Enmienda, *Cooper v. California,* 386 U.S. 58, 62 (1967), este Tribunal, al interpretar la Constitución del Estado Libre Asociado de Puerto Rico, *puede ampliar* el ámbito de los derechos humanos de los residentes de nuestro país. *Pueblo v. Dolce,* ante, pág. 428. Así lo hemos hecho en infinidad de ocasiones en el pasado. No debe perderse de vista que en la jurisdicción federal se ha resuelto que la llamada "regla de exclusión" no goza por sí misma de rango constitucional, sino que es meramente una medida profiláctica de los derechos bajo la citada Cuarta Enmienda. Por ende, en esa jurisdicción la misma está sujeta a modificación

o abolición. *Illinois v. Gates*, 462 U.S. 213, 223 (1983). En Puerto Rico, por el contrario, nuestra Constitución expresamente dispone, en lo pertinente, que la evidencia obtenida en violación del citado Art. II, Sec. 10, ante, pág. 299, *"será inadmisible* en los tribunales". (Énfasis suplido.)

Por otro lado, causa consternación en nuestra conciencia judicial el argumento esgrimido por la mayoría a los efectos de que "los acusados no quedan desprovistos de remedios si entienden que la declaración prestada es falsa o increíble", por cuanto tienen a su alcance, a posteriori, el "remedio adecuado" de solicitar la supresión de la evidencia obtenida al amparo de las disposiciones de la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. (Énfasis suprimido.) Opinión mayoritaria, pág. 479. Aparentemente la mayoría de este Tribunal nunca ha tenido la oportunidad de observar un hogar puertorriqueño luego de que el mismo haya sido objeto de un registro y allanamiento. Las disposiciones de la citada Regla 234 de Procedimiento Criminal *no* subsanan la flagrante violación de la intimidad de un hogar y el destrozo material del mismo. *El derecho a la intimidad y a la inviolabilidad del hogar se protege antes, no con posterioridad a que se haya cometido la violación del mismo.* Esto es, el propósito de nuestra Constitución —al "interp[oner] la figura independiente e imparcial del juez entre los agentes del orden público y los ciudadanos", *Pueblo v. Malavé González*, ante, pág. 474— lo es la protección a priori de los derechos de esos ciudadanos. El argumento esgrimido por la mayoría del Tribunal *es prueba evidente de un derecho pautado desde un lejano y apartado estrado apelativo sin base alguna en la práctica y dinámica forense penal.*

En resumen, las intrusiones ilegales e irrazonables en los hogares puertorriqueños no se evitan mediante la norma errónea, ambigua, innecesaria y peligrosa que se establece en el día de hoy. Ello se logra manteniendo firme y en vigor el

requisito del "examen personal" del declarante por parte del magistrado.

## II

La decisión emitida en *Laureano Maldonado v. Tribunal Superior*, 92 D.P.R. 381 (1965), no derrota la posición que sostenemos. En dicho caso expresamos y resolvimos:

> Surge claramente del récord de este caso que mientras el policía dictaba su declaración a la secretaria en el cuartel, *el juez de paz estaba presente y escuchando* y que al terminar la secretaria, el juez de paz revisó la referida declaración. Si dicho juez no le hizo preguntas, como testifica el policía, fue porque no lo consideró pertinente, pues no necesitaba información adicional alguna para llegar a la conclusión judicial de que de la declaración jurada surgía causa probable para ordenar el registro. *Concluimos que en estas circunstancias se cumplió con el requisito de examinar al declarante*, pues el término "examen" no significa exclusivamente el hacerle preguntas al declarante. De hecho el referido examen se llevó a cabo cuando la declaración se dictó ante el magistrado *que la oyó* y que luego la revisó y determinó que ésta contenía hechos suficientes para justificar plenamente la determinación de causa probable. *En esas circunstancias* resultaba innecesario y fútil el hacerle pregunta otra alguna al declarante sobre tales particulares. *Es juicioso señalar, sin embargo, que en circunstancias que no sean similares a las que privan en este caso, los jueces deben "examinar" más específicamente al declarante, además de su declaración jurada.* Como dijo el Juez Holmes, el derecho contra registros arbitrarios e irrazonables "debe protegerse aun si el mismo resultado hubiera podido alcanzarse en forma legal". *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385 (1920). (Énfasis suplido.)[7]

Como podemos notar, existe una abismal diferencia entre el presente caso y el de *Laureano Maldonado v. Tribunal*

---

[7] *Laureano Maldonado v. Tribunal Superior*, 92 D.P.R. 381, 388–389 (1965).

*Superior*, ante. En dicho caso, *a diferencia del presente*, el juez que expidió la orden de registro y allanamiento *estuvo presente mientras el agente prestaba la declaración.* En otras palabras, el juez tuvo *la oportunidad de escuchar y observar el comportamiento, o "demeanor", del agente al éste prestar su declaración* y quedó convencido, al examinar luego la misma, que lo declarado, y el contenido de dicha declaración, *era suficiente y confiable.*

En el presente caso, por el contrario, la declaración del agente fue preparada *con anterioridad* a comparecer ante el juez, *y éste se limitó a leer la misma,* no "examinando" en forma alguna al declarante. A la luz de lo expresado en *Laureano Maldonado v. Tribunal Superior*, ante, la actuación del magistrado de instancia en el presente caso no resulta "juiciosa". Mucho menos la de este Tribunal al aprobar la misma.

### III

Los hechos específicos que surgen de la declaración prestada por el agente del orden público demuestran la necesidad imperiosa que existía de que en el presente caso el magistrado "examinara" a dicho funcionario antes de emitir la orden de registro y allanamiento. Según los mismos aparecen consignados en la opinión mayoritaria emitida, se trata de la historia, *tantas veces repetida,* de que con motivo de haberse recibido una *confidencia anónima,* un agente se dirigió a determinado lugar desde donde pudo observar a una persona —el apelante— realizar a la vista de todos unas alegadas transacciones ilícitas de narcóticos. Esto es, se trata del *testimonio estereotipado* de la "transacción o acto ilegal a plena vista", que en tantas ocasiones ha sido objeto de atención por este Tribunal en el pasado y el cual, con toda seguridad, tendremos que atender en innumerables ocasiones en el futuro.

Un *testimonio similar* fue rechazado, como indigno de crédito e insuficiente en derecho para sostener la validez de una orden de registro y allanamiento, en la sentencia emitida por una mayoría de los entonces integrantes de este Tribunal en el caso de *Pueblo v. Martínez Martí*, 115 D.P.R. 832 (1984). Una lectura de las tres (3) opiniones allí emitidas — dos (2) opiniones concurrentes y una disidente— demuestra la disparidad de criterios imperantes entre los entonces integrantes de este Tribunal respecto a la procedencia de una orden de allanamiento en una situación de hechos como la que consideramos en el presente caso.

Cabe preguntarse, si los integrantes de este Tribunal en un momento determinado no se pudieron poner de acuerdo respecto a la suficiencia de una prueba de esta naturaleza para la expedición de una orden de allanamiento, ¿resulta jurídicamente correcto que un magistrado en una situación similar expida una orden de registro sin hacer preguntas de clase alguna con el propósito, cuando menos, de cerciorarse de que el testimonio del agente es uno *veraz y confiable* y así poder evitar un "penoso ataque o lesión" a uno de los derechos más fundamentales de nuestros ciudadanos? ¿No es esa precisamente la razón por la cual este Tribunal, en *Pueblo v. González del Valle*, 102 D.P.R. 374, 378 (1974), resolvió que esta clase de testimonio estereotipado sobre "acto ilegal a plena vista" debe "*escudriñarse* con especial rigor"? ¿Qué significado tiene el término "escudriñar"? ¿No es ello sinónimo de "examinar"?

## IV

Recapitulando, la decisión que emite una mayoría de los integrantes del Tribunal en el presente caso no sólo es errónea en derecho, sino que la misma es totalmente innecesaria. Considerando los intereses en controversia, no alcanzamos a comprender cómo es posible que sea tan difícil para el Tribunal mantener en vigor el requisito de que antes de que un

juez emita una orden de registro y allanamiento debe "examinar" al declarante. Dicho requisito no resulta ser oneroso en lo absoluto para el sistema de justicia que administramos y supervisamos. La eliminación del mismo, el cual constituye una salvaguarda esencial de la santidad de los hogares puertorriqueños, es completamente innecesaria y sumamente peligrosa por cuanto abre las puertas para la expedición de órdenes de registro y allanamiento a base de prueba simulada e insuficiente en derecho, acomodaticiamente preparada en un Cuartel de la Policía, que no es objeto de inquisición alguna por parte del juez antes de que se expida dicha orden.

Quizás este sea el momento apropiado para recordar las expresiones de este Tribunal en *Pueblo v. Lebrón*, 108 D.P.R. 324, 327–328 (1979), a los efectos de que:

> . . . el temor al crimen y el natural deseo de combatirlo no deben oscurecer el propósito central de la disposición. Libremos el lenguaje original de su glosa abultada. La garantía contra los registros y allanamientos irrazonables representa la voluntad de negarles a los gobiernos mejor intencionados, en aras de una libertad individual preciada, medios eficaces y aun aparentemente indispensables para lograr objetivos meritorios. Se estructuró precisamente ese derecho para proteger al ciudadano aun de los gobiernos democráticos más escrupulosos. Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn. L. Rev. 349, 353 (1974). Por bueno que sea el guardián, siempre existe el problema de quién lo vigila. *Quis custodiet custodiem. Cuando se descuidan los medios, cuando se disminuyen los derechos fundamentales a nombre de un ansiado orden, lo que viene a perecer al cabo es la libertad y con ella la democracia que se quiso defender.* Véase: *McNabb v. United States*, 318 U.S. 332, 347 (1943) (Frankfurter). (Énfasis suplido.)

Es por ello que disentimos.