ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| **EL PUEBLO DE PUERTO RICO**<br><br>Recurrido<br><br>v.<br><br>**MARCOS A. TORRES DÍAZ**<br><br>Peticionario | TA2025CE00625 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Crim. Núm.:<br>**J LA2025G0165**<br><br>Sobre:<br>Art. 6.08, Posesión de Arma de Fuego sin Licencia |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Díaz Rivera y la Jueza Boria Vizcarrondo[1]

### RESOLUCIÓN

En San Juan, Puerto Rico, a 31 de octubre de 2025.

Comparece ante nos Marcos A. Torres Díaz (Torres Díaz o peticionario) y solicita que revisemos la *Resolución* emitida el 30 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI). Mediante dicha determinación, el TPI declaró *Sin Lugar* la *Moción de Supresión de Evidencia* presentada por el peticionario.

Por las razones que expondremos a continuación, se deniega la expedición del auto de *certiorari*.

### I.

El 24 de mayo de 2025, la señora Xiomara Santiago Quiñones (señora Santiago Quiñones) solicitó una orden de protección en contra de Torres Díaz, al amparo de la *Ley para la Prevención e Intervención con la Violencia Doméstica*, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA sec. 601 *et seq.* (Ley Núm. 54). El Tribunal emitió la *Orden de Protección Ex Parte* solicitada con

---

[1] Véase *Orden Administrativa OATA-2025-214* del 31 de octubre de 2025.

vigencia hasta el 12 de junio de 2025. En su dictamen incluyó las siguientes determinaciones de hechos:

> Las partes conviven juntos y procrearon dos hijos, las partes viven juntos pero separados dentro del hogar. La peticionaria le ha solicitado que salga del hogar que está nombre de la peticionaria. El peticionado tiene un patrón de maltrato emocional con palabras, insultos y órdenes.

Entre otras cosas, el foro *a quo* ordenó a Torres Díaz abstenerse de acercarse, molestar, intimidar, amenazar o de cualquier otra forma interferir con Santiago Quiñones; visitar o acercarse a su hogar y alrededores. A su vez, ordenó a Torres Díaz desalojar inmediatamente la residencia que compartía con Santiago Quiñones y le prohibió regresar, así como entregar a la Policía de Puerto Rico cualquier arma de fuego que le perteneciera o que tuviera bajo su control. Asimismo, se ordenó a un oficial de la Policía de Puerto Rico acompañar a Torres Díaz a recoger sus pertenencias.

Posteriormente, Santiago Quiñones acudió al cuartel de la Policía de Peñuelas y le entregó al agente Felipe Casiano Caraballo (agente Casiano Caraballo) la orden con desalojo emitida contra Torres Díaz. El agente coordinó su diligenciamiento.

Por hechos acaecidos al momento en que el agente Casiano Caraballo acudió a la residencia de Santiago Quiñones para notificar la orden de protección y desalojo a Torres Díaz, este último enfrenta dos (2) acusaciones por violaciones a los Artículos 6.08 y 6.22 de la Ley Núm. 168-2019, según enmendada, conocida como la *Ley de Armas de Puerto Rico de 2020*, 25 LPRA sec. 461 *et seq.*

Luego de múltiples trámites procesales, el 17 de septiembre de 2025, Torres Díaz incoó una *Moción de Supresión de Evidencia.* En esencia, alegó que la evidencia ocupada en el caso fue producto de una intervención ilegal basada en un testimonio estereotipado del agente Casiano Caraballo. Asimismo, adujo que el mencionado agente no tenía motivos fundados válidos para intervenir con él y

que tampoco tenía derecho a estar en el lugar de los hechos por no contar con una orden de registro y allanamiento. Además, argumentó que no existía fundamento legal, ni consentimiento alguno para entrar a la residencia y llegar hasta el dormitorio donde se encontraba, lo que invalidaba la obtención de la prueba. El Ministerio Público no replicó por escrito la referida solicitud.

El 24 de septiembre de 2025, el TPI celebró la vista de supresión de evidencia correspondiente. La prueba del Ministerio Público consistió en el testimonio del agente Casiano Caraballo. El Tribunal tomó conocimiento judicial de la *Orden de Protección Ex Parte* (OPA-2025-056145). A continuación, un resumen de lo declarado por el testigo del Ministerio Público.

El agente Casiano Caraballo testificó que, durante su turno del 24 de mayo de 2025, en horas de la tarde, y tras consultar con su supervisor, diligenció en el Residencial Flamboyanes de Peñuelas la orden de protección OPA-2025-056145 expedida a favor de la señora Santiago Quiñones. Precisó que lo acompañó otro agente y su supervisor. Expresó que, al llegar al apartamento del cual Santiago Quiñones alegó ser titular, tocó la puerta, pero nadie respondió. Atestó que en ese momento le indicó a Santiago Quiñones que no poseía autoridad para entrar sin una orden judicial. Añadió que esta utilizó una llave y abrió la puerta, logrando acceso al interior del apartamento. Expuso que al entrar se identificó y preguntó si Marcos Torres Díaz se encontraba allí a lo que escuchó una voz masculina que dijo "que pasó".

El agente Casiano Caraballo añadió que caminó por el pasillo del apartamento, llegó hasta un cuarto que tenía la puerta cerrada y procedió a abrirla. Indicó que allí distinguió a un caballero acostado que solo vestía ropa interior de color negra y una camisa también de color negra, quien resultó ser Torres Díaz. Narró que le informó la razón de estar allí y que existía una orden del tribunal de

desalojo de la residencia. Expresó que Torres Díaz entendió lo informado y firmó la orden. Contó que una vez el caballero recogió sus pertenencias y procedía a vestirse, se entrelazó en el pecho un bulto negro. Testificó que cuando Torres Díaz iba a ponerse el pantalón lo sacudió de 2 a 3 veces y cayó una bala al suelo. Precisó que el caballero la pisó y cuando le preguntó si tenía licencia de portación de armas este le dijo que se la había encontrado en el residencial.

A raíz de lo anterior, el agente Casiano Caraballo expuso que le leyó las advertencias a Torres Díaz. Añadió que observó que del bulto de Torres Díaz sobresalía un magacín envuelto en "*tape*" negro, por lo que le preguntó si tenía licencia de portación y este le indicó que no. Además, atestó que, cuando ocupó el bulto, lo sintió pesado, lo que le hizo pensar que en su interior había un arma de fuego y otros magacines. Acto seguido, abrió el bulto y se encontró un arma color negro con un magacín puesto y otro magacín extendido. Luego expresó que colocó bajo arresto a Torres Díaz por violación a la Ley de Armas.

Así las cosas, el 30 de septiembre de 2025, el foro de instancia dictó la *Resolución* que hoy revisamos. Según adelantado, el TPI declaró *No Ha Lugar* la solicitud de supresión de evidencia presentada por Torres Díaz, luego de adjudicar total credibilidad al testimonio del agente Casiano Caraballo. En su pronunciamiento, la juzgadora de los hechos concluyó lo siguiente:

> El caso ante nos goza de una particularidad, ya que los motivos por los cuales el Agente se dirigió a la residencia donde se encontraba el acusado y para lo cual estaba autorizado como agente del orden público: en primer orden diligenciar una orden de protección al amparo de la Ley 54 legalmente expedida; en segundo orden procurar el desalojo del peticionado (acusado) de dicha residencia y en tercer orden cerciorarse y verificar que el acusado no poseía o tenía bajo su control arma de fuego alguna.
>
> No podemos abstraernos que de la prueba desfilada y el orden de los eventos que desencadenaron en la

ocupación de la evidencia delictiva conforme se alega en las acusaciones, se dio en un marco que dista de enmarcarse en el fundamento del testimonio estereotipado que alega defensa. Surge de la prueba que cuando el Agente le explicaba al acusado la razón de su presencia allí este se encontraba en ropa interior. Al haber una orden de desalojo, y el acusado tomar el pantalón del piso y "sacudirlo" (y citamos) es que cae al suelo la munición, lo que da motivo fundado al Agente para intervenir, poner bajo arresto y ocupar, como posteriormente lo hizo, el arma y los magazines y las municiones.

[...]

Inconforme con tal determinación, Torres Díaz acude ante nos mediante recurso de *certiorari* y alega que el TPI cometió el siguiente error:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR SIN LUGAR LA MOCIÓN DE SUPRESIÓN DE EVIDENCIA AUN CUANDO LA PRUEBA OCUPADA SE OBTUVO COMO CONSECUENCIA DE LA ENTRADA ILEGAL EN EL CUARTO DONDE SE ENCONTRABA EL SEÑOR TORRES DÍAZ CON LA PUERTA CERRADA EN ROPA INTERIOR.

El 28 de octubre de 2025, Torres Díaz instó una solicitud en auxilio de jurisdicción, con el propósito de que se paralizara el juicio señalado para el lunes, 3 de noviembre de 2025, hasta tanto el recurso fuera resuelto en sus méritos.

El 31 de octubre de 2025, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, presentó su *Moción en Cumplimiento de Orden en Oposición a Solicitud de Paralización de los Procedimientos*. Aduce que la paralización de los procedimientos causaría un daño sustancial al interés público y contribuiría al deterioro de la prueba de cargo.

Con el beneficio de la comparecencia de ambas partes y de la regrabación de la vista de supresión de evidencia, resolvemos.

## II.

### A.

Conforme al Art. II, Sec. 10 de nuestra Constitución y a la Cuarta Enmienda de la Constitución de los Estados Unidos, todo

ciudadano goza del derecho a la protección contra registros, incautaciones y allanamientos irrazonables que puedan afectar sus personas, casas, papeles y efectos. Esto, en protección al derecho a la intimidad y dignidad del individuo frente a actuaciones arbitrarias e irrazonables del Estado. *Pueblo v. Nieves Vives.* 188 DPR 1, 11-12 (2013); *Pueblo v. Díaz, Bonano*, 176 DPR 601 (2009). En consecuencia, se prohíbe el arresto de personas o registros o allanamientos sin previa orden judicial basada en causa probable. Esto, pues toda incautación o registro realizado sin orden se presume irrazonable y, por tanto, inválido. Véase, *Pueblo v. Serrano Reyes*, 176 DPR 437, 447 (2009).

Sin embargo, el requerimiento constitucional de una orden judicial previa no es absoluto, pues hay situaciones excepcionales y definidas estrechamente por la jurisprudencia en donde se ha reconocido la validez de un registro o arresto sin una orden. Véase, *Pueblo v. Marrero*, 213 DPR 404, 415-417 (2023). Lo que la Constitución pretende evitar es la actuación irrazonable del Estado. *Pueblo v. Rivera Colón*, 128 DPR 672, 682 (1991).

La Regla 11 de Procedimiento Criminal, 34 LPRA Ap. II, enumera las circunstancias en las cuales un funcionario del orden público podrá hacer un arresto sin orden previa. Esta dispone que:

a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario el funcionario deberá solicitar que se expida una orden de arresto.

b) Cuando la persona arrestada hubiese cometido un delito grave (*felony*) aunque no en su presencia.

c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (*felony*), independientemente de que dicho delito se hubiere cometido o no en realidad.

[…]

El motivo fundado es aquella información o aquel conocimiento que conduce a creer que el arrestado ha cometido un delito, según la persona ordinaria y prudente. *Pueblo v. González Rivera*, 100 DPR 651 (1972). Al determinar la existencia de motivos fundados se debe analizar bajo los criterios de probabilidad y razonabilidad. La clave es que el agente del orden público que lleva a cabo el arresto y registro sin orden judicial previa debe tener al momento de hacerlo base razonable para creer que se ha violado o se va a violar la ley. Es decir, si bajo un análisis de la totalidad de las circunstancias, una persona prudente y razonable podría creer que se ha cometido un delito o que va a cometerse. *Pueblo v. Nieves Vives*, supra, pág. 13. En fin, los motivos fundados son sinónimo de causa probable. *Íd.* a la pág. 14.

Nuestro Máximo Foro Judicial ha establecido unas situaciones excepcionales en las que se justifica prescindir de la orden judicial previa por no existir una expectativa razonable de intimidad. Estas son: (1) un registro incidental al arresto legal; (2) un registro consentido voluntariamente de forma expresa o implícita; (3) un registro en situación de emergencia; (4) una evidencia ocupada en el transcurso de una persecución (*hot pursuit*); (5) una evidencia a plena vista; (6) cuando el agente del orden público obtiene conocimiento de la existencia del material delictivo por el olfato; (7) evidencia arrojada o abandonada; (8) un registro o allanamiento de una estructura abandonada; (9) una evidencia obtenida durante un registro administrativo, siempre que cumpla con determinadas limitaciones; (10) un registro tipo inventario, y (11) una evidencia obtenida en un lugar público como resultado de la utilización de canes para olfatear. *Pueblo v. Báez López*, 189 DPR 918, 930-932 (2013).

Entre las esbozadas excepciones, y en lo pertinente a la controversia que nos ocupa, están la evidencia a plena vista, la

evidencia obtenida a través de los sentidos y el registro tipo inventario. En *Pueblo v. Dolce,* 105 DPR 422 (1976), nuestro Tribunal Supremo determinó que si un objeto se encuentra a plena vista y puede ser incautado sin orden judicial previa es preciso que: (1) el artículo se descubra por estar a plena vista y no en el curso o por razón de un registro; (2) el agente que divise la evidencia debe tener derecho a estar en el lugar donde alcanzó a verla; (3) el objeto debe descubrirse por inadvertencia, y (4) la naturaleza delictiva del objeto debe ser ostensible. *Íd.*

**B.**

La Regla 234 de Procedimiento Criminal, 34 LPRA Ap. II, R. 234, establece que la evidencia obtenida en violación al mandato constitucional será suprimida e inadmisible en los Tribunales como prueba de la comisión de un delito. La norma de exclusión persigue los siguientes propósitos importantes: (1) provee un remedio efectivo a la víctima del registro y allanamiento irrazonable o ilegal; (2) evita que el gobierno se beneficie de sus propios actos ilegales; (3) preserva la integridad del Tribunal, y (4) disuada a los oficiales del orden público a que en el futuro no repitan las acciones objeto de la impugnación.[2] La moción de supresión de evidencia presentada bajo la Regla 234 de Procedimiento Criminal, *supra,* es el mecanismo procesal para hacer valer el derecho de la ciudadanía contra registros, incautaciones y allanamientos irrazonables por parte del Estado. Mediante esta Regla, un ciudadano puede solicitar, antes del juicio, la supresión de evidencia material y testifical.

En su aspecto sustantivo, la Regla 234 de Procedimiento Criminal permite la supresión de evidencia obtenida en contravención a la cláusula constitucional contra registros, allanamientos e incautaciones irrazonables. Como señalamos,

---

[2] E. L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Colombia, Ed. Forum, 1991 Vol. I, Sec. 6.2, págs. 284-285.

debido a que un registro efectuado sin orden judicial previa se presume irrazonable e inválido, esta regla excluye evidencia obtenida en dicho escenario, salvo concurran las circunstancias de excepción reconocidas en la jurisprudencia. Véase, *Pueblo v. Acevedo Escobar*, 112 DPR 770, 775 (1982). En fin, al evaluar la razonabilidad de la intervención del Estado con los derechos constitucionales de la persona, debemos considerar los intereses protegidos frente a la totalidad de las circunstancias involucradas en la actuación gubernamental impugnada. *Pueblo v. Yip Berríos*, 142 DPR 386, 399 (1997).

Ahora bien, en atención a la moción de supresión de evidencia, se celebrará una vista y en dicha vista, el Ministerio Público tendrá el peso de la prueba en cuanto a la existencia de alguna de las excepciones que ameritan un arresto o registro sin orden judicial previa. El foro judicial está facultado para aquilatar la credibilidad de los testigos que declaren en la mencionada vista, debido a que es una función inherente del tribunal al celebrar una vista evidenciaria para oír prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud. Véase, *Pueblo v. Bonilla Romero*, 120 DPR 92, 109 (1987).[3]

### C.

El Tribunal Supremo de Puerto Rico definió el concepto de "testimonio estereotipado" como aquel que se reduce a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlos. *Pueblo v. Acevedo Estrada*, 150 DPR 84, 93 (2000). Este tipo de declaraciones, en casos en los cuales el testigo sea un agente del orden público, debe ser objeto de un escrutinio riguroso para evitar que declaraciones falsas o inexactas vulneren derechos constitucionales de los ciudadanos

---

[3] Véase, además, E. L. Chiesa, *Derecho Procesal Penal: Etapa Investigativa*, Publicaciones JTS, 2006, a la pág. 142-143.

inocentes. *Íd.* Jurisprudencialmente se han desarrollado una serie de criterios para evaluar la veracidad o credibilidad de un testimonio estereotipado, a saber: (1) escudriñar el testimonio con especial rigor; (2) tanto los casos de evidencia abandonada como los casos de evidencia ilegal a plena vista deben, en ausencia de otras consideraciones, deben inducir sospecha de la posible existencia de testimonio estereotipado; (3) si el testimonio es inherentemente irreal o improbable debe ser rechazado; (4) el testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles; (5) la presencia de contradicciones, lagunas o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de contradicciones; (6) el peso de la prueba de librar el testimonio de sospecha recae en el fiscal. *Pueblo v. Rivera Rodríguez*, 123 DPR 467, 480-481 (1989).

Ahora bien, la presencia de contradicciones o vaguedades en el testimonio debe tender a reforzar el recelo con que se debe escuchar este tipo de declaraciones. Sin embargo, el hecho de que un testimonio reúna cualidades distintivas de una prueba estereotipada y deba escudriñarse con especial rigor, no significa que deba descartarse por completo. *Pueblo. v. Camilo Meléndez*, 148 DPR 539, 559 (1999). Este testimonio solo debe rechazarse cuando ante el juzgador de los hechos resulte, o deba considerarse como inherentemente irreal o improbable. *Íd.* En una vista de supresión de evidencia lo único que el juzgador debe determinar es la legalidad o razonabilidad del registro realizado, a base de la preponderancia de la prueba. Finalmente, denegada una moción de supresión de evidencia, el acusado solo podrá renovar su solicitud de supresión

en el juicio si demuestra la existencia de nueva evidencia o si de la prueba de cargo surge la ilegalidad del registro.[4]

### III.

En su escrito, el peticionario aduce que el TPI se equivocó al denegar su moción de supresión de evidencia. Destaca que la intervención del agente Casiano Caraballo y su posterior registro fueron ilícitos. Añade que la entrada del agente Casiano Caraballo al cuarto donde se encontraba fue ilegal y sin consentimiento. Especifica que el cuarto tenía la puerta cerrada y él estaba en ropa interior, por lo que tenía una expectativa de intimidad que fue violentada. En esa dirección, razona que, previo a abrir la puerta, el agente debió pedir su anuencia para entrar o exigir que este saliera. Es su contención que, debido a que la presencia del agente Casiano Caraballo en la habitación fue ilegal, toda evidencia incautada debe ser suprimida. Añade que el relato del agente resultó inverosímil, en particular cuando expresó que una bala se cayó del pantalón. Entiende que lo anterior es la típica versión de evidencia arrojada a plena vista para justificar su intervención.

Por su parte, en su escrito en oposición a la solicitud de auxilio de jurisdicción, el recurrido alega que el peticionario no ha logrado establecer en qué se equivocó el Tribunal de Primera Instancia al negarse a suprimir una evidencia ocupada en la casa de la titular de la propiedad, quien dio acceso al agente de la Policía que acudió allí, con ella, a diligenciar una orden de protección y de desalojo. Sostiene que el TPI actuó correctamente al concluir que el agente Casiano Caraballo actuó de manera razonable al ocupar la evidencia delictiva (munición y arma de fuego) que vio a plena vista y en posesión del peticionario.

---

[4] E. L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, pág. 333.

Evaluado el expediente detenidamente, con especial atención a regrabación de la vista sobre supresión de evidencia, somos del criterio que no le asiste la razón al peticionario. La supresión de la evidencia incautada no procedía. Veamos.

Según expuesto, al evaluar una solicitud de supresión de evidencia, el tribunal debe justipreciar si el Ministerio Público presentó prueba para establecer los motivos fundados que tuvo el agente que originó la cadena de información que resultó en el arresto. *Pueblo v. Serrano Reyes*, supra, a la pág. 444. En el presente caso, el Ministerio Público presentó como prueba el testimonio del agente Casiano Caraballo, quien efectuó el arresto, así como prueba sobre los motivos fundados que tuvo dicho agente para intervenir con el peticionario. Al analizar el testimonio del agente Casiano Caraballo sobre los motivos fundados para la aludida intervención que generó la incautación del material delictivo, resolvemos que este no contiene lagunas o vaguedades que levanten sospechas de que es uno estereotipado e inverosímil. En específico, el agente pudo describir las características del pantalón del cual cayó la bala, la mochila incautada, la evidencia delictiva ocupada, entre otros detalles.

Así, entendemos que el Ministerio Público rebatió la presunción de ilegalidad de la intervención y registro efectuados por el agente Casiano Caraballo sin orden judicial. Es claro que al peticionario no se le violentó la protección constitucional contra registros, incautaciones y allanamientos irrazonables.

Por todo lo anterior, a la luz del derecho aplicable y los hechos específicos del caso, no encontramos razón alguna para inmiscuirnos en la apreciación de la prueba testifical que realizó el

TPI.[5] No existe en el expediente indicios de pasión, prejuicio, parcialidad o error manifiesto en la determinación impugnada.

**IV.**

Por los fundamentos previamente expuestos, se deniega la expedición del auto de *certiorari*. Se devuelve el caso al foro de instancia para la continuación de los procedimientos.

Se declara *No Ha Lugar* la moción en auxilio de jurisdicción instada por Torres Díaz.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[5] Esta norma descansa en el hecho de que los foros de instancia están en mejor posición para evaluar la prueba desfilada, pues tienen la oportunidad de observar el *demeanor* de los testigos y de escuchar de primera mano sus declaraciones; aspecto vital al momento de adjudicar credibilidad. En vista de lo anterior, su apreciación es meritoria de gran respeto y deferencia. *Pueblo v. Acevedo Estrada,* supra, a las págs. 98-99.