ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Recurrido<br><br>v.<br><br>**ANIBAL VILLARRUBIA MÉNDEZ**<br><br>Peticionario | TA2025CE00856 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de Añasco<br><br>Crim. Núm.:<br>**I1TR202500082**<br><br>Sobre:<br>Art. 7.02 Ley 22 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de enero de 2026.

Comparece ante nos Aníbal Villarrubia Méndez (Villarrubia Méndez o peticionario) y solicita que revisemos la *Minuta Resolución* emitida el 29 de octubre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Mediante dicha determinación, el TPI declaró *No Ha Lugar* la moción de supresión de evidencia incoada por el peticionario.

Por las razones que expondremos a continuación, se deniega la expedición del auto de *certiorari.*

## I.

Por hechos acaecidos el 8 de enero de 2025, el Ministerio Público presentó contra Villarrubia Méndez una denuncia por infracción al Artículo 7.02 de la Ley Núm. 22-2000, 9 LPRA sec. 5202, conocida como *Ley de Vehículos y Tránsito de Puerto Rico*, según enmendada. Tras la celebración de la vista al amparo de la Regla 6 de Procedimiento Criminal se determinó causa probable por el delito imputado.

El 29 de julio de 2025, Villarrubia Méndez incoó una *Moción de Supresión de Prueba de Sangre y Solicitud de Vista Evidenciaria.*

En esencia, alegó que la prueba de alcohol en la sangre obtenida fue producto de una intervención ilegal del agente Daniel Vega Montalvo sin motivos fundados, por lo que debía suprimirse. Precisó que el agente Vega Montalvo recibió una comunicación del Centro de Mando donde alegadamente alguien se comunicó para manifestar que una persona manejaba un vehículo de motor bajo los efectos de bebidas embriagantes. Destacó que el agente Vega Montalvo nunca dialogó con la persona que alegadamente lo observó bajo los efectos de bebidas embriagantes antes de su detención. Añadió que la intervención de la Policía de Puerto Rico se realizó sin orden judicial y en violación a sus derechos constitucionales.

El 28 de agosto de 2025, el Ministerio Público replicó la referida solicitud de supresión de evidencia. Sostuvo que el agente Vega Montalvo intervino con el acusado por motivos fundados transferidos desde el Centro de Mando. Asimismo, razonó que el agente se percató del estado de embriaguez de Villarrubia Méndez, lo cual corroboró al realizarle la prueba de alcohol por sangre que arrojó a 0.13%. Argumentó que la intervención y el arresto fue legal y en su consecuencia, la prueba de sangre realizada fue legítima y admisible. Además, adujo que el testimonio del agente Vega Montalvo en la vista de Regla 6 de Procedimiento Criminal no fue uno irreal o inverosímil, ni surgía prueba que Villarrubia Méndez fue coaccionado, intimidado o sometido a la muestra por violencia.

El 29 de octubre de 2025, el TPI celebró la vista de supresión de evidencia correspondiente. La prueba del Ministerio Público consistió en el testimonio del paramédico José Santiago, el agente Vega Montalvo y los siguientes documentos:

Exhibit I – Informe de Análisis Toxicológico.

Exhibit II - Parte de Remisión – Información del Intervenido.

Exhibit III – Advertencias a Persona bajo los Efectos de Bebidas embriagantes, drogas o sustancias controladas.

Exhibit IV – Pendrive (Grabación del *Bodycam*).

A continuación, un resumen de los testimonios presentados en la vista:

**Paramédico José Santiago**

Atestó que era paramédico y que la noche de los hechos tuvo un turno de 3:00 pm a 11:00 pm. Detalló que recibió una llamada de su centro de operaciones indicándole a su vez que se recibió una llamada anónima al sistema 911 con información de una persona en mal estado dentro de un vehículo *pickup* color blanco frente a un hotel en Joyuda. Expresó que llegó a la carretera 102 en la ambulancia junto a su compañero de labores, realizó un escaneo visual, localizó la *pickup* y se estacionó detrás de esta. Añadió que se acercó al vehículo, entabló una conversación con la persona que lo conducía y le ofreció ayuda, pero este la negó. Detalló que la persona resultó ser Villarrubia Méndez. Precisó que observó al caballero con dificultad para hablar, olor a alcohol y pudo apreciar un arma de fuego en el interior del vehículo. Testificó que, a raíz de dicha observación, decidió regresar al interior de la ambulancia por motivos de seguridad. Allí notó que Villarrubia Méndez emprendió la marcha del vehículo en dirección a Mayagüez. Añadió que llamó a la comandancia de la policía y dio los detalles del vehículo al retén de turno. Luego se marchó detrás de la *pickup* y llamó al sistema 911. Indicó que después perdió contacto visual del automóvil, por lo que regresaron a su base.

**Agente Daniel Vega Montalvo**

El agente Vega Montalvo testificó que trabajaba en la división de patrullas de Mayagüez y durante su turno del 8 de enero de 2025, en horas de la noche, se escuchó en el radio de la patrulla una comunicación de la Comandancia del Área de Mayagüez indicando que una persona se comunicó para informar sobre un conductor de

una *pickup* que se le ofreció servicios médicos, pero se negó. Articuló que se le ordenó que estuvieran pendientes a una *pickup* marca Ford color blanca con tablilla 1164262 para ver si el conductor estaba bajo los efectos de bebidas embriagantes. Expresó que cuando llegaron a la carretera núm. 2 localizó al vehículo con la tablilla que le ofrecieron del Centro de Mando de la Comandancia, por lo que procedieron a detenerlo. Atestó que en este momento encendió la cámara corporal y avisó al Centro de Mando. Añadió que se identificó con el conductor, Villarrubia Méndez, y le indicó las razones de la detención.

El agente Vega Montalvo expuso que, al interactuar con Villarrubia Méndez, pudo percibir olor a alcohol, ojos rojos y pesadez al hablar, lo cual le dio motivos fundados para creer que conducía bajo lo efectos del alcohol. Expuso que le leyó las advertencias al caballero, lo colocó bajo arresto y fue llevado al hospital para hacerle la prueba de sangre. Aceptó que Villarrubia Méndez no cometió delito alguno frente a él y que lo detuvo porque le transfirieron los motivos fundados. Afirmó que pudo corroborar la información obtenida.

Así las cosas, el foro de instancia dictó la *Minuta Resolución* que hoy revisamos. Según adelantado, el TPI declaró *No Ha Lugar* la solicitud de supresión de evidencia presentada por Villarrubia Méndez, luego de adjudicar total credibilidad a los testimonios del paramédico José Santiago y del agente Vega Montalvo.

Inconforme con tal determinación, Villarrubia Méndez acude ante nos mediante recurso de *certiorari* y alega que el TPI cometió los siguientes errores:

> Erró el TPI al declarar No Ha Lugar la solicitud de supresión de evidencia, a pesar de haber tenido ante sí prueba oral y documental que estableció la ausencia total de motivos fundado para intervenir con el ciudadano Aníbal Villarrubia Méndez y llevar a cabo un arresto ilegal sin orden.

> Erró el TPI al no suprimir la prueba de alcohol en sangre por ser esta el resultado de un arresto ilegal sin orden y en ausencia total de motivos fundados para intervenir con el ciudadano.

Transcurrido el término reglamentario para que el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, presentara su alegato en oposición, procedemos a resolver sin el beneficio de su comparecencia.

**II.**

**A.**

Conforme al Art. II, Sec. 10 de nuestra Constitución y a la Cuarta Enmienda de la Constitución de los Estados Unidos, todo ciudadano goza del derecho a la protección contra registros, incautaciones y allanamientos irrazonables que puedan afectar sus personas, casas, papeles y efectos. Esto, en protección al derecho a la intimidad y dignidad del individuo frente a actuaciones arbitrarias e irrazonables del Estado. *Pueblo v. Nieves Vives.* 188 DPR 1, 11-12 (2013); *Pueblo v. Díaz, Bonano,* 176 DPR 601 (2009). En consecuencia, se prohíbe el arresto de personas o registros o allanamientos sin previa orden judicial basada en causa probable. Esto, pues toda incautación o registro realizado sin orden se presume irrazonable y, por tanto, inválido. Véase, *Pueblo v. Serrano Reyes,* 176 DPR 437, 447 (2009).

Sin embargo, el requerimiento constitucional de una orden judicial previa no es absoluto, pues hay situaciones excepcionales y definidas estrechamente por la jurisprudencia en donde se ha reconocido la validez de un registro o arresto sin una orden. Véase, *Pueblo v. Marrero,* 213 DPR 404, 415-417 (2023). Lo que la Constitución pretende evitar es la actuación irrazonable del Estado. *Pueblo v. Rivera Colón,* 128 DPR 672, 682 (1991).

La Regla 11 de Procedimiento Criminal, 34 LPRA Ap. II, enumera las circunstancias en las cuales un funcionario del orden público podrá hacer un arresto sin orden previa. Esta dispone que:

a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario el funcionario deberá solicitar que se expida una orden de arresto.

b) Cuando la persona arrestada hubiese cometido un delito grave (*felony*) aunque no en su presencia.

c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (*felony*), independientemente de que dicho delito se hubiere cometido o no en realidad.

[...]

El motivo fundado es aquella información o aquel conocimiento que conduce a creer que el arrestado ha cometido un delito, según la persona ordinaria y prudente. *Pueblo v. González Rivera*, 100 DPR 651 (1972). Al determinar la existencia de motivos fundados se debe analizar bajo los criterios de probabilidad y razonabilidad. La clave es que el agente del orden público que lleva a cabo el arresto y registro sin orden judicial previa debe tener al momento de hacerlo base razonable para creer que se ha violado o se va a violar la ley. Es decir, si bajo un análisis de la totalidad de las circunstancias, una persona prudente y razonable podría creer que se ha cometido un delito o que va a cometerse. *Pueblo v. Nieves Vives*, supra, pág. 13. En fin, los motivos fundados son sinónimo de causa probable. *Íd.* a la pág. 14.

**B.**

La Regla 234 de Procedimiento Criminal, 34 LPRA Ap. II, R. 234, establece que la evidencia obtenida en violación al mandato constitucional será suprimida e inadmisible en los Tribunales como prueba de la comisión de un delito. La norma de exclusión persigue los siguientes propósitos importantes: (1) provee un remedio efectivo a la víctima del registro y allanamiento irrazonable o ilegal; (2) evita

que el gobierno se beneficie de sus propios actos ilegales; (3) preserva la integridad del Tribunal, y (4) disuada a los oficiales del orden público a que en el futuro no repitan las acciones objeto de la impugnación.[1] La moción de supresión de evidencia presentada bajo la Regla 234 de Procedimiento Criminal, *supra*, es el mecanismo procesal para hacer valer el derecho de la ciudadanía contra registros, incautaciones y allanamientos irrazonables por parte del Estado. Mediante esta Regla, un ciudadano puede solicitar, antes del juicio, la supresión de evidencia material y testifical.

En su aspecto sustantivo, la Regla 234 de Procedimiento Criminal permite la supresión de evidencia obtenida en contravención a la cláusula constitucional contra registros, allanamientos e incautaciones irrazonables. Como señalamos, debido a que un registro efectuado sin orden judicial previa se presume irrazonable e inválido, esta regla excluye evidencia obtenida en dicho escenario, salvo concurran las circunstancias de excepción reconocidas en la jurisprudencia. Véase, *Pueblo v. Acevedo Escobar*, 112 DPR 770, 775 (1982). En fin, al evaluar la razonabilidad de la intervención del Estado con los derechos constitucionales de la persona, debemos considerar los intereses protegidos frente a la totalidad de las circunstancias involucradas en la actuación gubernamental impugnada. *Pueblo v. Yip Berríos*, 142 DPR 386, 399 (1997).

Ahora bien, en atención a la moción de supresión de evidencia, se celebrará una vista y en dicha vista, el Ministerio Público tendrá el peso de la prueba en cuanto a la existencia de alguna de las excepciones que ameritan un arresto o registro sin orden judicial previa. El foro judicial está facultado para aquilatar la credibilidad de los testigos que declaren en la mencionada vista,

---

[1] E. L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991 Vol. I, Sec. 6.2, págs. 284-285.

debido a que es una función inherente del tribunal al celebrar una vista evidenciaria para oír prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud. Véase, *Pueblo v. Bonilla Romero*, 120 DPR 92, 109 (1987).[2]

## C.

El Tribunal Supremo de Puerto Rico definió el concepto de "testimonio estereotipado" como aquel que se reduce a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlos. *Pueblo v. Acevedo Estrada*, 150 DPR 84, 93 (2000). Este tipo de declaraciones, en casos en los cuales el testigo sea un agente del orden público, debe ser objeto de un escrutinio riguroso para evitar que declaraciones falsas o inexactas vulneren derechos constitucionales de los ciudadanos inocentes. *Íd.* Jurisprudencialmente se han desarrollado una serie de criterios para evaluar la veracidad o credibilidad de un testimonio estereotipado, a saber: (1) escudriñar el testimonio con especial rigor; (2) tanto los casos de evidencia abandonada como los casos de evidencia ilegal a plena vista deben, en ausencia de otras consideraciones, deben inducir sospecha de la posible existencia de testimonio estereotipado; (3) si el testimonio es inherentemente irreal o improbable debe ser rechazado; (4) el testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles; (5) la presencia de contradicciones, lagunas o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de contradicciones; (6)

---

[2] Véase, además, E. L. Chiesa, *Derecho Procesal Penal: Etapa Investigativa*, Publicaciones JTS, 2006, a la pág. 142-143.

el peso de la prueba de librar el testimonio de sospecha recae en el fiscal. *Pueblo v. Rivera Rodríguez*, 123 DPR 467, 480-481 (1989).

Ahora bien, la presencia de contradicciones o vaguedades en el testimonio debe tender a reforzar el recelo con que se debe escuchar este tipo de declaraciones. Sin embargo, el hecho de que un testimonio reúna cualidades distintivas de una prueba estereotipada y deba escudriñarse con especial rigor, no significa que deba descartarse por completo. *Pueblo. v. Camilo Meléndez*, 148 DPR 539, 559 (1999). Este testimonio solo debe rechazarse cuando ante el juzgador de los hechos resulte, o deba considerarse como inherentemente irreal o improbable. *Íd.* En una vista de supresión de evidencia lo único que el juzgador debe determinar es la legalidad o razonabilidad del registro realizado, a base de la preponderancia de la prueba. Finalmente, denegada una moción de supresión de evidencia, el acusado solo podrá renovar su solicitud de supresión en el juicio si demuestra la existencia de nueva evidencia o si de la prueba de cargo surge la ilegalidad del registro.[3]

### III.

En su escrito, el peticionario aduce que el TPI se equivocó al denegar su moción de supresión de evidencia. Destaca que la intervención del agente Vega Montalvo fue ilegal, al no tener motivos fundados para detenerlo. Esboza que toda evidencia obtenida como parte de su arresto sin orden judicial debe ser suprimida porque el Ministerio Público no rebatió su presunción de ilegalidad.

En específico, el peticionario arguye que la opinión de un particular, entiéndase, el paramédico Santiago, fue equiparada a motivos fundados para arrestar a un ciudadano sin orden judicial. Es su contención que en este caso no cabe hablar de motivos fundados transferidos porque dicha figura se limita a los agentes del

---

[3] E. L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, pág. 333.

orden público y el conocimiento personal que estos se pueden transmitir en colaboración. Resalta que, si la información brindada se trata de una confidencia por un particular, esta puede llegar a constituir motivos fundados para que un agente realice un arresto, pero primero tiene que ser corroborada mediante su observación; y que, a su vez, lo observado se relacione con conducta delictiva cometida o en proceso de cometerse. Sostiene que, en el caso de autos, la corroboración de la información ofrecida por el ciudadano particular debía llevar al agente Vega Montalvo a que en su presencia se cometiera un delito. Por ende, reitera que no procedía que el agente lo detuviera para arrestarlo e investigar la información que le fue brindada por el Centro de Mando.

Evaluado el expediente, con especial atención a la regrabación de la vista sobre supresión de evidencia, somos del criterio que no le asiste la razón al peticionario. La supresión de la evidencia incautada no procedía. Veamos.

Según expuesto, al evaluar una solicitud de supresión de evidencia, el tribunal debe justipreciar si el Ministerio Público presentó prueba para establecer los motivos fundados que tuvo el agente que originó la cadena de información que resultó en el arresto. *Pueblo v. Serrano Reyes*, supra, a la pág. 444.

La presente causa se originó con una llamada anónima al sistema de 911. El Ministerio Público sentó a declarar al paramédico Santiago. Este explicó que la llamada anónima se canalizó a través de los servicios de ambulancia para los cuales laboraba. Además, declaró la forma en que tuvo contacto directo con el peticionario y pudo percibir el estado de embriaguez en el que se encontraba. Es ahí cuando el paramédico transfirió esos motivos fundados al Centro de Mando de la Comandancia del Área de Mayagüez, el cual posteriormente contactó al agente Vega Montalvo.

El Ministerio Público también presentó como prueba el testimonio del agente Vega Montalvo, quien efectuó el arresto y narró detalladamente los motivos fundados que tuvo dicho para intervenir con el peticionario. Al analizar el testimonio del agente sobre los motivos fundados para la aludida intervención que generó la prueba de alcohol en la sangre, resolvemos que este no contiene lagunas o vaguedades que levanten sospechas de que es uno estereotipado e inverosímil. En específico, el agente pudo describir las características del vehículo de motor del peticionario, el hecho de que este tenía los ojos rojos, pesadez al hablar y olor a alcohol, entre otros detalles.

Aunque la intervención concernida se originó por una llamada anónima al sistema 911, ello de por sí no torna el arresto y la evidencia ocupada en ilegal. Nótese que la información fue corroborada por el paramédico Santiago, que interactuó directamente con el peticionario y observó signos claros de intoxicación, tales como olor a alcohol y dificultad para hablar. Posteriormente, el paramédico informó a la policía de Puerto Rico detalles específicos del vehículo e indicó que el peticionario reingresó a la vía pública, creando un riesgo inmediato a la seguridad vial. Somos del parecer que el agente Vega Montalvo actuó basado en la información confiable transmitida por el Centro de Mando, identificó el vehículo descrito y realizó la detención conforme a los motivos fundados existentes, aun cuando no haya observado personalmente alguna infracción.

Bajo la totalidad de las circunstancias, entendemos que el Ministerio Público rebatió la presunción de ilegalidad de la intervención y arresto efectuados por el agente Vega Montalvo sin orden judicial. Es claro que al peticionario no se le violentó la protección constitucional contra registros, incautaciones y

allanamientos irrazonables. No procedía la supresión de la evidencia.

Por todo lo anterior, a la luz del derecho aplicable y los hechos específicos del caso, no encontramos razón alguna para inmiscuirnos en la apreciación de la prueba testifical que realizó el TPI en cuanto a la transferencia de los motivos fundados para la intervención y arresto del peticionario.[4] No existe en el expediente indicios de pasión, prejuicio, parcialidad o error manifiesto en la determinación impugnada.

**IV.**

Por los fundamentos previamente expuestos, se deniega la expedición del auto de *certiorari*. Se devuelve el caso al foro de instancia para la continuación de los procedimientos.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[4] Esta norma descansa en el hecho de que los foros de instancia están en mejor posición para evaluar la prueba desfilada, pues tienen la oportunidad de observar el *demeanor* de los testigos y de escuchar de primera mano sus declaraciones; aspecto vital al momento de adjudicar credibilidad. En vista de lo anterior, su apreciación es meritoria de gran respeto y deferencia. *Pueblo v. Acevedo Estrada,* supra, a las págs. 98-99.