ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Recurrido<br><br>v.<br><br>**ORLANDO ARROYO MARTÍNEZ**<br><br>Peticionario | TA2026CE00369 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de Toa Alta<br><br>Civil Núm.:<br>**D4TR2025-0095**<br><br>Sobre:<br>Art. 7.02 (Ley 22) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de abril de 2026.

Comparece ante nos Orlando Arroyo Martínez (Arroyo Martínez o peticionario) y solicita que revisemos la *Resolución* emitida el 24 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Toa Alta (TPI). Mediante dicha determinación, el TPI declaró *No Ha Lugar* la moción de supresión de evidencia incoada por el peticionario.

Por las razones que expondremos a continuación, se expide el auto de *certiorari* y se confirma el dictamen recurrido.

**I.**

Por hechos acaecidos el 5 de julio de 2025, el Ministerio Público presentó una denuncia contra Arroyo Martínez por infracción al Artículo 7.02 de la Ley Núm. 22-2000, 9 LPRA sec. 5202, conocida como *Ley de Vehículos y Tránsito de Puerto Rico*, según enmendada (Ley Núm. 22-2000). Tras la celebración de la vista al amparo de la Regla 6 de Procedimiento Criminal se determinó causa probable por el delito imputado.

El 14 de octubre de 2025, Arroyo Martínez incoó una *Moción Solicitando Supresión de Evidencia.* En esencia, objetó la admisión

de toda evidencia material y/o testimonial, por entender que se obtuvo mediante un registro e incautación ilegal sin existir motivos fundados y en contravención de la reglamentación vigente. Precisó que el agente interventor Jonathan Torres Salgado (agente Torres Salgado) no cumplió con el término de 20 minutos de observación que establece el Reglamento Núm. 9234 del Departamento de Salud, con el propósito de asegurarse que no existiera alcohol residual en su boca al momento de efectuarse el análisis. Añadió que tampoco se realizó el *Standard Field Sobriety Test* ni ninguna prueba de campo en el lugar de la detención, según establece el Artículo 7.09 de la Ley Núm. 22-2000. Además, adujo que el testimonio del agente Torres Salgado fue uno estereotipado.

El Ministerio Público replicó la referida solicitud de supresión de evidencia oportunamente. Sostuvo que del escrito de la defensa no surgían los elementos necesarios para establecer la irracionabilidad de la intervención realizada por el agente Torres Salgado. Destacó que los motivos fundados para la intervención surgieron por infracciones de tránsito, específicamente, conducir un vehículo de motor con la tablilla ilegible. Añadió que, una vez el agente detuvo a Arroyo Martínez y le solicitó los documentos pertinentes, percibió signos aparentes de una persona bajo los efectos de bebidas embriagantes (ojos rojizos, fuerte olor a alcohol y aspecto sudoroso). Por consiguiente, le realizó las advertencias correspondientes y Arroyo Martínez libre y voluntariamente permitió que se le realizara la prueba de alcohol en el aliento mediante el instrumento *Intoxilyzer 9000* en el cuartel. Por último, alegó que también se le expidió un boleto por conducir la tablilla ilegible, por lo que se eliminaba cualquier suposición de constituir un testimonio estereotipado.

Tras varios trámites procesales, las partes solicitaron al Tribunal que resolviera la petición de supresión de evidencia

mediante escritos y por el expediente. Según ambos escritos, la prueba de campo se le realizó a Arroyo Martínez luego de los 20 minutos de la intervención. La intervención fue a la 1:25 am y la prueba se hizo a la 1:49 am, arrojando 0.128%.

Así las cosas, el 24 de febrero de 2026, el foro de instancia dictó la *Resolución* que hoy revisamos, por medio de la cual declaró *No Ha Lugar* la solicitud de supresión de evidencia presentada por Arroyo Martínez. En esta incluyó las siguientes expresiones:

> Según el orden de los hechos; la intervención por tablilla ilegible se percata de las características de persona bajo los efectos de bebidas embriagantes, se le hacen las advertencias, se realiza el arresto y luego llevándolo a cuartel 24 minutos después de la intervención tomando la prueba de aliento. **No es necesaria ni obligatoria prueba de campo cuando hay suficientes motivos para entender que la persona está conduciendo o haciendo funcionar un vehículo bajo los efectos de bebidas embriagantes**. Véase *Pueblo de Puerto Rico v. Héctor Caraballo Borrero* 187 DPR 256. (Énfasis nuestro).

El juzgador de los hechos reconoció la validez de la detención efectuada por el agente Torres Salgado por tener motivos para creer que se estaba cometiendo una infracción de tránsito. Puntualizó que fue inmediatamente después de la detención que el agente se percató de las características que indicaron que Arroyo Martínez estaba bajo los efectos de bebidas embriagantes. Expuso que la prueba para establecer la razonabilidad de la actuación del Estado para justificar el arresto y eventual prueba de detección de alcohol fue suficiente. Concluyó que no procedía la supresión de la evidencia obtenida al realizar la prueba de detección de alcohol con el *Intoxilyzer 9000*.

Inconforme con tal determinación, Arroyo Martínez acude ante nos mediante recurso de *certiorari* presentado el 26 de marzo de 2026. Alega que el TPI cometió los siguientes errores:

> Erró el TPI al declarar No Ha Lugar la solicitud de supresión de evidencia, utilizando como normativa una jurisprudencia que fue enmendada por la Ley 25-2019 y por la Ley 76-2021, careciendo el agente interventor

de motivos fundados para el arresto conforme al derecho vigente. Además, el Honorable Tribunal no tomó en consideración lo establecido en el Reglamento 9217 del Negociado de la Policía de Puerto Rico, titulado "Reglamento para Administrar la Prueba de Campo Estandarizada de Sobriedad".

El 20 de abril de 2026, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, presentó una *Solicitud de Desestimación y Escrito en Cumplimiento de Orden*.[1] Procedemos a resolver.

## II.

### A.

Conforme al Art. II, Sec. 10 de nuestra Constitución y a la Cuarta Enmienda de la Constitución de los Estados Unidos, todo ciudadano goza del derecho a la protección contra registros, incautaciones y allanamientos irrazonables que puedan afectar sus personas, casas, papeles y efectos. Esto, en protección al derecho a la intimidad y dignidad del individuo frente a actuaciones arbitrarias e irrazonables del Estado. *Pueblo v. Nieves Vives.* 188 DPR 1, 11-12 (2013); *Pueblo v. Díaz, Bonano*, 176 DPR 601 (2009). En consecuencia, se prohíbe el arresto de personas o registros o allanamientos sin previa orden judicial basada en causa probable. Esto, pues toda incautación o registro realizado sin orden se presume irrazonable y, por tanto, inválido. Véase, *Pueblo v. Serrano Reyes*, 176 DPR 437, 447 (2009).

Sin embargo, el requerimiento constitucional de una orden judicial previa no es absoluto, pues hay situaciones excepcionales y definidas estrechamente por la jurisprudencia en donde se ha reconocido la validez de un registro o arresto sin una orden. Véase, *Pueblo v. Marrero*, 213 DPR 404, 415-417 (2023). Lo que la

---

[1] Solicita la desestimación porque el apéndice del recurso presentado por el peticionario no cuenta con copia de la notificación de la *Resolución* recurrida. Argumenta que la ausencia de este documento impide que este Foro pueda determinar su jurisdicción.

Constitución pretende evitar es la actuación irrazonable del Estado. *Pueblo v. Rivera Colón*, 128 DPR 672, 682 (1991).

La Regla 11 de Procedimiento Criminal, 34 LPRA Ap. II, enumera las circunstancias en las cuales un funcionario del orden público podrá hacer un arresto sin orden previa. Esta dispone que:

a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario el funcionario deberá solicitar que se expida una orden de arresto.

b) Cuando la persona arrestada hubiese cometido un delito grave (*felony*) aunque no en su presencia.

c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (*felony*), independientemente de que dicho delito se hubiere cometido o no en realidad.

[...]

El motivo fundado es aquella información o aquel conocimiento que conduce a creer que el arrestado ha cometido un delito, según la persona ordinaria y prudente. *Pueblo v. González Rivera*, 100 DPR 651 (1972). Al determinar la existencia de motivos fundados se debe analizar bajo los criterios de probabilidad y razonabilidad. La clave es que el agente del orden público que lleva a cabo el arresto y registro sin orden judicial previa debe tener al momento de hacerlo base razonable para creer que se ha violado o se va a violar la ley. Es decir, si bajo un análisis de la totalidad de las circunstancias, una persona prudente y razonable podría creer que se ha cometido un delito o que va a cometerse. *Pueblo v. Nieves Vives*, supra, pág. 13. En fin, los motivos fundados son sinónimo de causa probable. *Íd.* a la pág. 14.

**B.**

La Regla 234 de Procedimiento Criminal, 34 LPRA Ap. II, R. 234, establece que la evidencia obtenida en violación al mandato constitucional será suprimida e inadmisible en los Tribunales como prueba de la comisión de un delito. La norma de exclusión persigue

los siguientes propósitos importantes: (1) provee un remedio efectivo a la víctima del registro y allanamiento irrazonable o ilegal; (2) evita que el gobierno se beneficie de sus propios actos ilegales; (3) preserva la integridad del Tribunal, y (4) disuada a los oficiales del orden público a que en el futuro no repitan las acciones objeto de la impugnación.[2] La moción de supresión de evidencia presentada bajo la Regla 234 de Procedimiento Criminal, *supra*, es el mecanismo procesal para hacer valer el derecho de la ciudadanía contra registros, incautaciones y allanamientos irrazonables por parte del Estado. Mediante esta Regla, un ciudadano puede solicitar, antes del juicio, la supresión de evidencia material y testifical.

En su aspecto sustantivo, la Regla 234 de Procedimiento Criminal permite la supresión de evidencia obtenida en contravención a la cláusula constitucional contra registros, allanamientos e incautaciones irrazonables. Como señalamos, debido a que un registro efectuado sin orden judicial previa se presume irrazonable e inválido, esta regla excluye evidencia obtenida en dicho escenario, salvo concurran las circunstancias de excepción reconocidas en la jurisprudencia. Véase, *Pueblo v. Acevedo Escobar*, 112 DPR 770, 775 (1982). En fin, al evaluar la razonabilidad de la intervención del Estado con los derechos constitucionales de la persona, debemos considerar los intereses protegidos frente a la totalidad de las circunstancias involucradas en la actuación gubernamental impugnada. *Pueblo v. Yip Berríos*, 142 DPR 386, 399 (1997).

Ahora bien, en atención a la moción de supresión de evidencia, se celebrará una vista y en dicha vista, el Ministerio Público tendrá el peso de la prueba en cuanto a la existencia de alguna de las excepciones que ameritan un arresto o registro sin

---

[2] E. L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991 Vol. I, Sec. 6.2, págs. 284-285.

orden judicial previa. El foro judicial está facultado para aquilatar la credibilidad de los testigos que declaren en la mencionada vista, debido a que es una función inherente del tribunal al celebrar una vista evidenciaria para oír prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud. Véase, *Pueblo v. Bonilla Romero*, 120 DPR 92, 109 (1987).[3]

## C.

El Tribunal Supremo de Puerto Rico definió el concepto de "testimonio estereotipado" como aquel que se reduce a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlos. *Pueblo v. Acevedo Estrada*, 150 DPR 84, 93 (2000). Este tipo de declaraciones, en casos en los cuales el testigo sea un agente del orden público, debe ser objeto de un escrutinio riguroso para evitar que declaraciones falsas o inexactas vulneren derechos constitucionales de los ciudadanos inocentes. *Íd.* Jurisprudencialmente se han desarrollado una serie de criterios para evaluar la veracidad o credibilidad de un testimonio estereotipado, a saber: (1) escudriñar el testimonio con especial rigor; (2) tanto los casos de evidencia abandonada como los casos de evidencia ilegal a plena vista deben, en ausencia de otras consideraciones, deben inducir sospecha de la posible existencia de testimonio estereotipado; (3) si el testimonio es inherentemente irreal o improbable debe ser rechazado; (4) el testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles; (5) la presencia de contradicciones, lagunas o vaguedades en el testimonio debe tender a reforzar el

---

[3] Véase, además, E. L. Chiesa, *Derecho Procesal Penal: Etapa Investigativa*, Publicaciones JTS, 2006, a la pág. 142-143.

recelo con que hay que escuchar esta clase de contradicciones; (6) el peso de la prueba de librar el testimonio de sospecha recae en el fiscal. *Pueblo v. Rivera Rodríguez,* 123 DPR 467, 480-481 (1989).

Ahora bien, la presencia de contradicciones o vaguedades en el testimonio debe tender a reforzar el recelo con que se debe escuchar este tipo de declaraciones. Sin embargo, el hecho de que un testimonio reúna cualidades distintivas de una prueba estereotipada y deba escudriñarse con especial rigor, no significa que deba descartarse por completo. *Pueblo. v. Camilo Meléndez,* 148 DPR 539, 559 (1999). Este testimonio solo debe rechazarse cuando ante el juzgador de los hechos resulte, o deba considerarse como inherentemente irreal o improbable. *Íd.* En una vista de supresión de evidencia lo único que el juzgador debe determinar es la legalidad o razonabilidad del registro realizado, a base de la preponderancia de la prueba. Finalmente, denegada una moción de supresión de evidencia, el acusado solo podrá renovar su solicitud de supresión en el juicio si demuestra la existencia de nueva evidencia o si de la prueba de cargo surge la ilegalidad del registro.[4]

### III.

En esencia, el peticionario alega que el TPI se equivocó al denegar su moción de supresión de evidencia. Argumenta que en el caso de autos no se realizó ninguna prueba estandarizada de sobriedad ni ninguna otra prueba de campo o inicial en el lugar de la intervención, como el *Alcosensor*, según establecido en los Artículos 7.09 (e) y (f) de la Ley Núm. 22-2000. Por ende, es su contención que el agente Torres Salgado carecía de motivos fundados para arrestarlo y someterlo a una prueba posterior. Así, esboza que toda evidencia obtenida en la prueba del *Intoxylizer 9000*

---

[4] E. L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Colombia, Ed. Forum, 1991, Vol. I, pág. 333.

debe ser suprimida por haber sido realizada sin tener los motivos fundados conforme a derecho.

De otro lado, el recurrido arguye que el agente Torres Salgado no estaba obligado a realizar una prueba de campo, mucho menos cuando el peticionario consintió al *Intoxilyzer 9000* de forma voluntaria. Añade que de los argumentos de las partes no surge que, en el periodo de 24 minutos antes de hacer la prueba, Arroyo Martínez haya ingerido alimentos o vomitado. Sostiene que el proceso con el *Intoxilyzer 9000* cumplió con las disposiciones de las Reglas 13.15 y 13.16 del Reglamento Núm. 9234.

Además, el recurrido razona que la detención del vehículo de motor fue legítima, toda vez que el agente del orden público observó al peticionario conducirlo con la tablilla ilegible. Puntualiza que, una vez detenido, el agente percibió un fuerte olor a alcohol en el aliento de Arroyo Martínez y lo observó sudoroso y con los ojos rojizos. Aduce que lo anterior le proveyó motivos fundados suficientes para creer que este conducía en estado de embriaguez y requerirle que se realizara la prueba con el *Intoxilyzer 9000* en el cuartel. Subraya que la inexistencia de una prueba de campo no incide con la legalidad de la intervención ni con la admisibilidad de los resultados posteriormente obtenidos bajo todos los parámetros de la ley.

Evaluado el expediente, somos del criterio que no le asiste la razón al peticionario. La supresión de la evidencia obtenida no procedía. Veamos.

Según expuesto, al evaluar una solicitud de supresión de evidencia, el tribunal debe justipreciar si el Ministerio Público presentó prueba para establecer los motivos fundados que tuvo el agente que originó la cadena de información que resultó en el arresto. *Pueblo v. Serrano Reyes*, supra, a la pág. 444.

La presente causa se originó con una detención del vehículo que conducía el peticionario por tener una tablilla ilegible, en

contravención con las disposiciones de la Ley Núm. 22-2000. Del escrito del Ministerio Público surge que el agente Torres Salgado explicó detalladamente los motivos fundados que tuvo para intervenir con el peticionario. Al analizar el testimonio del agente, resolvemos que este no contiene lagunas o vaguedades que levanten sospechas de que es uno estereotipado e inverosímil.

Aunque durante la intervención concernida no se formalizó una prueba de campo, ello de por sí no torna ilegal ni provoca la supresión de la prueba obtenida posteriormente con el *Intoxilyzer 9000*. El Artículo 7.09, incisos (c), (e) y (f) de la Ley Núm. 22-2000, 9 LPRA sec. 5209, no obligan a la realización de esta prueba, más bien le brinda discreción al agente del orden público a requerirla. Ello no significa que el agente pueda adquirir motivos fundados de que la persona conduce bajo los efectos del alcohol por otras vías, como las observaciones del comportamiento, entre otros signos aparentes.

Bajo la totalidad de las circunstancias, entendemos que el Ministerio Público rebatió la presunción de ilegalidad de la intervención y arresto efectuados por el agente Torres Salgado sin orden judicial. Es claro que al peticionario no se le violentó la protección constitucional contra registros, incautaciones y allanamientos irrazonables. No procedía la supresión de la evidencia.

Por todo lo anterior, a la luz del derecho aplicable y los hechos específicos del caso, no encontramos razón alguna para inmiscuirnos en la apreciación de la prueba que realizó el TPI. No existe en el expediente indicios de pasión, prejuicio, parcialidad o error manifiesto en la determinación impugnada.

**IV.**

Por los fundamentos previamente expuestos, se expide el auto de *certiorari* y se confirma el dictamen recurrido. Se devuelve el caso al foro de instancia para la continuación de los procedimientos.

Se declara *No Ha Lugar* la solicitud de desestimación instada por el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones